```
 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3
     UNITED STATES OF AMERICA,   )
 4               Plaintiff,      )          NO: 3:17CR129(MPS)
                                 )
 5   vs.                         )
                                 )          August 28, 2017
 6   RAYMOND McLAUGHLIN, also    )
     known as Shakir Ra Ade Bey,)
 7   also known as Shakir Ade    )
     Bey,                        )
 8               Defendant.      )          Hearing
     _____)
 9

10                        450 Main Street
                          Hartford, Connecticut
11

12

13   B E F O R E:
              THE HONORABLE MICHAEL P. SHEA, U.S.D.J.
14

15   A P P E A R A N C E S:

16   For the Plaintiff :        HENRY K. KOPEL, AUSA
                                 United States Attorney's Office
17                               157 Church Street, 23rd Floor
                                 New Haven, CT 06510
18
     For the Defendant:          RAYMOND McLAUGHLIN
19                               Pro Se

20                               CHARLES WILLSON, ESQ.
                                 Federal Public Defender's Office
21                               10 Columbus Blvd.
                                 Hartford, CT 06106
22

23

24   Court Reporter:            Martha C. Marshall, RMR, CRR

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

1            THE COURT:  Good afternoon.  Please be seated.

2            We're here in United States versus Raymond

3    McLaughlin.  The case is 17CR129.

4            Let's begin with having counsel state their

5    appearances.

6            MR. KOPEL:  Thank you.  Good afternoon, Your Honor.

7    Henry Kopel for the United States.  And also at counsel table

8    is Treasury Inspector General Special Agent Christopher Gust

9    and IRS CI Special Agent Michael Dragon.  Thank you.

10            THE COURT:  Good afternoon.

11            MR. WILLSON:  Your Honor, Charles Willson here, and

12    Mr. McLaughlin is in the front row of the galley.  I'm ready,

13    Your Honor.

14            THE COURT:  Okay.  All right.  Well, before we get

15    to the main purpose of the hearing, I did want to just ask

16    Mr. Kopel to update us.  Last time, sir, you mentioned that

17    there may be -- the Government was contemplating superseding

18    the indictment.  Do you have any further information for us

19    about that?

20            MR. KOPEL:  Yes, your Honor.  We promptly vetted

21    that issue in our Financial Crimes and Public Corruption

22    Section of the U.S. Attorney's Office and, while we have

23    continue to have concerns about the subject matter we were

24    looking at, there's been a decision by the Office to decline

25    a potential bank fraud indictment with respect to the history

1    of the mortgage application and after effects that are the

2    very context of the charge that's brought here.  In other

3    words, that mortgage became a foreclosure lawsuit within

4    which lawsuit the action charged here happened.  That basis

5    and those series of events are not being any longer

6    considered for bank fraud.

7            THE COURT:  So the indictment that we have now is

8    the indictment the Government expects we will have at trial?

9            MR. KOPEL:  It is, Your Honor.

10           THE COURT:  Thank you.

11           I know we were here together on July 28th.  At that

12   time I discussed with Mr. McLaughlin what had been reported

13   to me was a request to represent himself and we went through

14   it at that time, and towards the end of our discussion he

15   asked if he had to decide today and I said, no, he didn't.

16   And I believe we agreed that if he wanted to represent

17   himself in the future that he would inform the Court through

18   his lawyer.  Not too long after that Mr. Willson did file

19   something, a notice, in particular, that said that he

20   believes that the Court should resume the *Faretta* inquiry.  I

21   note that in between the July 28th hearing and the notice

22   that Mr. Willson filed, I had issued an order that I thought

23   summarized our discussion.  And I don't know if my order is

24   what prompted the new request, but I guess I'll ask

25   Mr. Willson to speak first and then I'll ask Mr. McLaughlin

1      to speak if we're going to go down this road.

2            Mr. Willson, I see Mr. McLaughlin is not joining you

3      at the table.  Without getting into details, is that sort of

4      a sign of the state of your relationship at this point?

5            MR. WILLSON:  I don't want to overstate things.

6      He's choosing to sit there.  My interactions with

7      Mr. McLaughlin, to the extent there have been interactions,

8      have been civil, polite.

9            THE COURT:  You think I should resume the *Faretta*

10     inquiry?

11           MR. WILLSON:  I definitely think you should, Your

12     Honor.  We did have the status conference schedule hearing

13     that is typical for Your Honor to hold at the beginning of a

14     case.  When I returned to the office at some point around

15     then, I did notice a couple of filings that appeared on the

16     docket.  And when I tried to decipher the stamp on it from

17     the court, it looked like they may have been filed prior to

18     when we had our status conference.  So I didn't really do

19     anything about them frankly.  But then after that there was a

20     subsequent communication that gave me cause to file the

21     notice that I filed which is document 42 on the record.  By

22     and large, I just took your notice and pasted it in and said

23     I think we need to keep going.

24           THE COURT:  Okay.  Mr. McLaughlin, can we then ask

25     you to come forward, because I'm going to ask you some

1    questions and there's no way the court reporter can take down

2    your answers unless you're at a microphone.  So whether you

3    choose to sit next to Mr. Willson or come to the podium,

4    that's your choice, but I do need you to stand in front of a

5    microphone or sit in front of a microphone if you're more

6    comfortable.  Doesn't bother me.  Thank you, sir.  Just make

7    sure the microphone is pulled close so I can ask you

8    questions and hear your answers.

9         Mr. Willson indicated to me just now that he would

10   like me to -- he thinks I should resume the *Faretta* inquiry,

11   and that's just that discussion we were having last time

12   about any decision you might make to represent yourself in

13   this proceeding without a lawyer.

14        Do you want to represent yourself in this case?  I

15   should say before we start, I should say kind of the same

16   warning I gave you last time.  Anything you say today could

17   be used against you if the case goes to trial.  That said,

18   I'm going to try to keep my questions today in areas that

19   won't be dealing with the offense.  Mr. Willson can always

20   jump in and say, Judge, I think that really steers too close

21   to the offense.  I'm going to try to do this in a way that

22   does not create a danger of self-incrimination, but I can't

23   be perfect all the time.  So I should say anything you say

24   could be used against you in court.

25        Let me start out by saying, do you want to represent

1    yourself in this matter?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So let me now go through with you the

4    questions we did last time.  I know you had to answer them

5    last time.  I'm sorry to make you answer them again, but I

6    don't have any choice, sir.  It's been a month so I have to

7    go through this.  So just bear with me.

8              You've expressed a desire to represent yourself.  Of

9    course, as we discussed, you have a constitutional right to

10   counsel, a lawyer.  So today we're going to have a hearing to

11   ensure that any waiver by you of your right to counsel is

12   made knowingly, understanding your rights, understanding the

13   pros and cons of representing yourself and, of course,

14   voluntarily.  As I said, I'll have to go through a series of

15   questions with you.

16             Let me begin by just making sure you understand that

17   I'm going to be relying on you to answer truthfully my

18   questions so I can make the correct decision about

19   your -- about your very important constitutional right to be

20   represented by a lawyer and also your right to represent

21   yourself.  Do you understand that I'm relying on you?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  If you don't understand any of my

24   questions, just let me know.  And I'll try to move it along.

25   Because I know last time you told me -- I think you told me,

1    correct me if I'm wrong, did you graduate from college?

2              THE DEFENDANT:  Yes, sir -- well, no, three years.

3              THE COURT:  Three years of college.  But you

4    graduated from high school?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You went to the Police Academy?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And you served as an officer in the town

9    of Windsor, Connecticut, is that right?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  For how many years?  Remind me.

12             THE DEFENDANT:  11 and a half, 12.

13             THE COURT:  11 and a half, 12 years as a police

14   officer?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And I can't remember if we discussed it.

17   Did you, during those 11, 12 years, were you always on patrol

18   or did you graduate to detective or sergeant or anything like

19   that?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Always a patrol officer?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  And just in terms of your understanding,

24   you know, you're with us and present today, are you under the

25   care of a doctor or psychiatrist now or anything like that?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  During the past 48 hours, have you taken

3   any narcotic drugs, any medicine or any pills?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  And during that period, have you drunk

6   any alcoholic beverages?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Your mind is clear today?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And you understand what's going on?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  Thank you.

13          So just to go over the charges again with you, and I

14   know you've heard it a couple of times now but, as we

15   discussed last time, there's an indictment against you.  We

16   just discussed it with Mr. Kopel.

17          Count One of the indictment, which is the first

18   charge against you, charges corrupt endeavor to obstruct and

19   impede the due administration of the Internal Revenue laws.

20   The statute is Title 26, United States Code, Section 7212.

21          The maximum penalties, if you're convicted on Count

22   One, are up to three years of imprisonment, a $5,000 fine,

23   one year of supervised release, and a $100 mandatory special

24   assessment.

25          Count Two charges making a false statement to the

1    United States Government, in violation of Title 18, United

2    States Code, Section 1001.

3              If convicted of Count Two, you face a maximum of 5

4    years imprisonment, $250,000 fine, three years of supervised

5    release, a $100 mandatory special assessment.

6              I could run those sentences, if you were convicted

7    of both, consecutively, which means in effect you'd face a

8    total of eight years of imprisonment.

9              Do you understand what I've said about Count One and

10   Count Two and the penalties that could be imposed for those

11   counts?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you have any questions for me or

14   Mr. Willson at this time about the charges you face?

15             THE DEFENDANT:  Are the charges -- no, I want to ask

16   the Judge.  Are the charges -- are they charging Raymond

17   McLaughlin in his private capacity or his public capacity?

18             THE COURT:  I'm going to answer that the best I can.

19   I know those distinctions matter to you, at least as I

20   understand it.  I guess I would assume both.  In all capacity

21   you are being charged, okay.  That's the best I can do to

22   answer that question.

23             THE DEFENDANT:  So I'm being charged publicly and

24   privately?

25             THE COURT:  Again, I don't know what you mean by

1    those two different things.  I know that has some meaning to
2    you only because I've seen you refer to that in filings on
3    the docket.  All I can tell you, Mr. McLaughlin, is you are
4    being charged, and what that would mean is if you were
5    convicted you would be the one to go to prison.  Does that
6    help?
7          THE DEFENDANT:  Yeah, kind of helps.  But Raymond
8    McLaughlin has two statuses, he's either private or public.
9    And Raymond McLaughlin in his private status is a beneficiary
10   of the public trust of which the prosecutor Deidre M. Daly,
11   in her public capacity, Henry K. Kopel, in his public
12   capacity, and every public servant in here took an oath to
13   uphold the public trust, the United States public trust.
14   Part of that trust is the people are the beneficiary of that
15   trust.  So if I'm the beneficiary of the trust, who is the
16   trustee?  The public servants are the trustee.  So I need to
17   know who's being charged.  Is it the beneficiary that's being
18   charged?
19         THE COURT:  Mr. McLaughlin, I'm sorry, I really
20   can't have that kind of a conversation with you.  I would
21   like to try to but, candidly, it's not going to have any
22   meaning if I have that conversation with you.  Because the
23   kinds of things you're saying don't have, from my
24   perspective, legal significance.  I mean no disrespect to
25   you, sir.

1    Mr. Willson, did you want to say something?

2    MR. WILLSON:  First, I'm available to confer on

3    these issues with Mr. McLaughlin.

4    Just from my past experience, when a Court is in

5    this situation, giving any sort of legal advice, would be

6    problematic for Mr. McLaughlin and burdensome on the Court's

7    resources.  By Court, I mean the broader Court, the

8    district's resources.

9    So I'm happy to discuss these things with

10   Mr. McLaughlin in private, obviously, and I throw that out

11   there.  I just wanted to highlight that point.

12   THE COURT:  Thank you, Mr. Willson.  I appreciate

13   it.

14   One thing Mr. Willson said that I should have said

15   to you earlier, Mr. McLaughlin, I can't give you legal

16   advice.  And so to the extent that you're asking for that --

17   THE DEFENDANT:  Well, Your Honor, don't get me

18   wrong, I'm not asking for that.  I'm asking these questions

19   because they're relevant to what's going on.  A trustee

20   cannot charge a beneficiary.  They're, in my private

21   capacity, they have a duty to me.  So I need to know -- the

22   indictment is defective as it is, because it needs to be

23   corrected to specify which capacity I'm being charged in.  I

24   think the trustee's charging the beneficiary of the public

25   trust.

 1          THE COURT:  Mr. McLaughlin, the only reason I'm here
 2    today --
 3          THE DEFENDANT:  I understand.
 4          THE COURT:  Please don't interrupt me, sir, because
 5    I didn't interrupt you.
 6          THE DEFENDANT:  Okay.  Sorry.
 7          THE COURT:  The only reason I'm here today is to try
 8    to deal with your request to represent yourself.  And so I'm
 9    not going to have a discussion about private trust and public
10    trust because -- and, again, I mean no disrespect to you,
11    sir -- but it's just not pertinent to why we're here.  You
12    may think it's pertinent but, with all due respect, it
13    doesn't matter whether you think it's pertinent at this time.
14    I'm not saying down the road you can't -- if you're
15    representing yourself, you can file legal things on the
16    docket and I'll have to address your arguments, but not
17    today, sir.  Today I'm just trying to understand if you
18    understand the charges against you.  And if I can't make a
19    finding that you do, I may not be able to allow you to
20    represent yourself, even though I certainly want to afford
21    you your constitutional rights, but I may not be able to make
22    a finding that you understand the charges against you.  So
23    I'm hoping that we can get through this but, if you don't
24    want to, then you won't be able to, and Mr. Willson will have
25    to continue representing you whether he wants to or not.

1          So let me start -- you'll have a chance to make

2     these kinds of points.  I understand you want to.  And we

3     will probably have a day where we have these discussions, but

4     today is not that day.  Do you understand?

5          THE DEFENDANT:  Yes.  I mean, Your Honor, the only

6     reason why I asked that question is because you asked me if I

7     understood the charges.  So -- against you.  So I'm trying to

8     figure out.  That's the only reason I asked.  I'm not trying

9     to get legal advice from you or have you go out of your way

10    to answer any questions.  I just wanted to know based on what

11    you asked me.  That's the only reason why I asked you.  But I

12    do understand that.  I mean, I can put some document in and

13    put those arguments in it, I know that.

14         THE COURT:  Yes.  So I guess here really is the

15    question.  Do you understand that if a jury finds you guilty

16    of those charges, you will be the one to go to prison?

17         THE DEFENDANT:  I do understand that.

18         THE COURT:  Okay.  And if you were convicted, I'm

19    not saying you will be convicted, but if you were convicted,

20    one of the things that I would have to consider in sentencing

21    you is something called the Sentencing Guidelines.  The

22    Guidelines are issued by a body called the United States

23    Sentencing Commission and I would have to consider them, but

24    they would not be binding on me in deciding on a sentence if

25    you were found guilty of either or both of the charges

1    against you.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Now, let me now talk about courtroom

4    procedure and the Rules of Evidence and the Rules of Criminal

5    Procedure.  So although someone who is representing himself

6    has a right to some procedural indulgence from the Court, for

7    me to try to not hold you quite as strictly to the rules as

8    lawyers would be held, nonetheless, the Federal Rules of

9    Criminal Procedure and the Federal Rules of Evidence will

10   still govern these proceedings.  So if you're either unable

11   or unwilling to abide by those rules I could terminate your

12   right to self-representation.  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  I think last time we discussed a little

15   bit some of the areas of background you have.  I don't want

16   to get into it again in detail, but I do need to ask you,

17   when you were at the Police Academy, did you learn some

18   things about the law?

19             THE DEFENDANT:  Yeah.

20             THE COURT:  And what kind of things did you learn?

21             THE DEFENDANT:  I mean, it was basically very

22   topical.  Just, I mean, search and seizure stuff.  Very

23   basic.  It was nothing in detail.

24             THE COURT:  And I think we discussed this again last

25   time.  Again, I don't have a clear memory of it.  I do a lot

1    of things in a month.  I'm in court a lot.  So sorry to have

2    to ask you this again.  Have you testified in court as a

3    police officer?

4            THE DEFENDANT:  Yeah, a few times.

5            THE COURT:  And were these criminal trials,

6    hearings, what were the nature?

7            THE DEFENDANT:  No.  I mean, motor vehicle stops.

8            THE COURT:  And did you also have in-service

9    training as a police officer?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  And did some of that training involve

12   legal issues, legal concepts?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  And are you familiar with -- actually,

15   have you ever represented yourself in a criminal case before?

16           THE DEFENDANT:  No, I never had one.

17           THE COURT:  And are you familiar with the Federal

18   Rules of Evidence?

19           THE DEFENDANT:  Somewhat.

20           THE COURT:  What are you familiar -- what

21   familiarity do you have with the Federal Rules of Evidence?

22           THE DEFENDANT:  I mean, it's very minimal.  I've

23   read a few things here and there, but it's not in detail.

24           THE COURT:  Do you remember anything you read?  Tell

25   me what you know.

1              THE DEFENDANT:  Not at this point.

2              THE COURT:  So the Federal Rules of Evidence will

3     govern what evidence can and cannot be introduced at the

4     trial.  In representing yourself, you're going to have to

5     comply with those rules.  Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And the same goes for the Federal Rules

8     of Criminal Procedure, they'll govern how the case is handled

9     up through and including the trial.  Do you understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  And do you understand that to represent

12    yourself in any way competently you'll have to familiarize

13    yourself with those rules?  Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Do you have experience with the Federal

16    Rules of Criminal Procedure?

17             THE DEFENDANT:  I mean, like I said, I've glanced

18    over a few of them.

19             THE COURT:  Is there anything you can tell me about

20    what you saw?

21             THE DEFENDANT:  I've read over Rule 12, 4 to 7, a

22    few other ones.  I just can't remember right now.

23             THE COURT:  What do you remember about what you read

24    in Rule 12?

25             THE DEFENDANT:  Well, basically, you know, the

1    different ways you can file a motion to dismiss, different

2    ways you can attack the indictment or charges or whatever,

3    stuff like that.

4              THE COURT:  And what about Rule 47, what do you

5    remember about that?

6              THE DEFENDANT:  I think something with jurisdiction,

7    similar to a motion to dismiss, stuff like that.  I can't

8    remember exactly what it is.

9              THE COURT:  All right.  So when we get to any motion

10   to dismiss you might file, I'll be making decisions about

11   that based not only on the Federal Rules of Civil Procedure,

12   but also on the substantive law that I mentioned when I was

13   explaining the charges in the case.  Did you know that?

14             THE DEFENDANT:  I understand it, yeah.

15             THE COURT:  And so in order to make an effective

16   motion to dismiss, you're going to have to familiarize

17   yourself with that law, too.  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Another thing, Mr. McLaughlin, in order

20   to represent yourself effectively, you're going to have to

21   review whatever evidence the Government wants to introduce at

22   the trial so you're not at the trial and say, Judge, this is

23   the first time I've seen this.  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  So if the Government sends you -- if

1   you're representing yourself, the Government may send you

2   evidence to your house or wherever, you're going to need to

3   accept it and read it in order for you to have a chance for

4   being ready for the trial.  Do you understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Are you willing to do that?

7           THE DEFENDANT:  Well, I don't know if you're -- is

8   it going to be coming certified mail?

9           THE COURT:  Would you prefer it come another type of

10  mail?

11          THE DEFENDANT:  Regular mail is fine.

12          THE COURT:  Is that because you don't want to sign

13  for it?

14          THE DEFENDANT:  I just have a thing about signing

15  for I don't know what's in it.  Just regular mail --

16          THE COURT:  Let me just explain why the

17  Government -- I'm not inside Mr. Kopel's head so I don't know

18  why he sent you certified mail, but this is why I would do it

19  if I were in his shoes.  I wouldn't want someone to come to

20  the trial and say, Judge, I never got this.  And they can't

21  prove I never got it.  You see what I'm saying?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  How do we solve that problem,

24  Mr. McLaughlin?  I'm happy to have the Government send it to

25  you by donkey cart, frankly, I don't care, as long as you get

1    it in a timely manner.  Do you understand what I'm saying?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  So how are we going to deal with that?

4    Can we have you -- we can't have you come -- I can't have

5    everybody in court every week.  My docket is too busy for

6    that.  We need to have a way for you to receive the mail the

7    way you want to receive it, but also for the Government to be

8    assured I'm not going to have to deal with arguments later on

9    that I never got this piece of paper.  Do you have any

10   suggestion?

11         THE DEFENDANT:  Like I say, regular mail is fine.

12         THE COURT:  I guess the only issue I'm

13   having -- what about this.  What if we were to do this.  What

14   if the Government were also to send a copy of anything it

15   sent to you to Mr. Willson, and you would know that if you

16   ever wanted to see anything you could make arrangements with

17   Mr. Willson to view it privately at his office, that way the

18   Government doesn't know what you're up to.  You can review it

19   on your own and just in case you're not sure you've gotten

20   everything, you can go to Mr. Willson's office to look at it.

21   Would that be okay with you?

22         THE DEFENDANT:  If I'm going to be guiding myself

23   through this process, Mr. Willson shouldn't be involved.

24         THE COURT:  Well, that's not really so,

25   Mr. McLaughlin.  Let me explain why.  You are going to be

1    guiding yourself through the process, you're quite right

2    about that.  But I am likely, if I allow you to represent

3    yourself and make the findings I need to find, I'm likely to

4    appoint Mr. Willson by what we call stand-by counsel.

5    Stand-by counsel has a very limited role.  All they're there

6    for is that so you can consult.

7            So let me give you an example.  Suppose we're at the

8    trial.  You're examining the witness.  The government

9    objects.  I sustain the objection.  And you say, Judge, I

10   don't understand.  And you're trying to get something into

11   evidence.  I don't understand.  I'm not going to be able to

12   take time in front of the jury every time and explain the

13   rules to you.  That's where Mr. Willson can help.  You can

14   walk over to him and say what's he talking about?  And he can

15   hopefully tell you what I'm talking about.  And at least

16   then, you may not agree with it, you may decide you want to

17   try something else, you're not required to follow

18   Mr. Willson's legal advice because you're representing

19   yourself, but at least you'll have an idea of what's going on

20   in the courtroom.  That's one of the reasons we appoint

21   stand-by counsel.  And if I find that you are competent to

22   represent yourself and allow you to do it, I will appoint him

23   stand-by counsel.  Do you understand?

24            THE DEFENDANT:  Okay.

25            THE COURT:  So I understand that if you're

1    representing yourself you're the guy and you're going to have

2    the documents.  All I'm saying is why shouldn't we have the

3    Government send a copy to Mr. Willson.  Not the document, the

4    document will be sent to you.  But a copy.  So that just in

5    case before trial, geez, do I have everything, you can go to

6    Mr. Willson's office.  He's not going to help you review it.

7    It will be up to you to review it.  Is there any reason we

8    shouldn't do that?

9              THE DEFENDANT:  No, that's fine.

10             THE COURT:  So we'll plan on that.  And in light of

11   that, I'm not going to entertain anything you might say at

12   trial saying, Judge, I didn't get that.  If the Government

13   tells me we sent it and it's at Mr. Willson's office, I'm

14   going to say, well, Mr. McLaughlin, it was at Mr. Willson's

15   office.  Are we clear on that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Let me now talk a little more

18   about -- and I will incorporate by reference our discussion

19   last time, because I don't want to keep you here forever,

20   Mr. McLaughlin.  One thing about -- I have to go back to

21   sentencing for a minute.

22             Do you understand that if you are convicted, if are

23   you convicted, there are certain mitigating factors that

24   could be argued to the Judge, me, at sentencing.  But if

25   you're representing yourself, you're going to have to figure

1    that out on your own.  Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Now, I want to talk to you about the

4    advantages and disadvantages of representing yourself.  One

5    advantage, as I'm sure you've already figured out for

6    yourself, is that, you know, nobody can tell a story about

7    your life or what you did as well as you can.  That's why a

8    lot of Defendants want to accept -- I won't say a lot of

9    them.  That's why some Defendants want to represent

10   themselves.  What often happens, though, Mr. McLaughlin, if

11   they have a close relationship with their lawyer, they find

12   that actually the lawyer can do a really good job telling

13   their story.  I'm not trying to persuade you, I'm just

14   telling you what my experience is.  And sometimes, in any

15   event, that's outweighed by the enormous disadvantages of

16   representing yourself.  So let me tell you about some of

17   those.

18             First, a lawyer's obviously trained in the law,

19   therefore, understanding the Federal Rules of Evidence and

20   Federal Rules of Criminal Procedure.  Mr. Willson isn't just

21   any lawyer, and I'm not here to sing his praises, I'm just

22   here to give you a little bit of information about that.

23   It's one thing to have a lawyer who does a lot of different

24   things, real estate closings, car accidents, represent you.

25   That lawyer can probably do a very good job or a credible job

1    representing you.  But Mr. Willson, this is effectively what

2    he does.  He represents people in this Court who are accused

3    of felonies.  That's all he does and he's done it for many

4    years.  And so as a result he's got a great deal of

5    experience in doing so and there aren't a lot of lawyers who

6    have his level of experience in doing that.  Do you

7    understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And so he is much better equipped than

10   even the kind of lawyer I talked about a moment ago would be

11   in being able to represent someone like you.  Do you

12   understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And you understand that you have a right

15   to have him represent you, or for some reason he couldn't or

16   you had some irreconcilable conflict that I made a finding, I

17   would appoint another lawyer who was just about as

18   experienced as Mr. Willson to represent you and I would do

19   that at no charge to you.  Do you understand that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And do you understand that if you

22   represent yourself, Mr. Willson's role will be as we just

23   discussed, extremely limited?  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And that you'll be responsible for

1    making the legal judgments and the strategic judgments in

2    your case all by yourself, do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  And I won't be able to help you because

5    I'm the Judge.  Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  So taking the discussion we

8    had a month ago and the discussion we've had now,

9    Mr. McLaughlin, do you believe you understand both the

10   advantages and the disadvantages of representing yourself?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Do you have any questions for me about

13   any of that?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Do you have any questions for me about

16   anything I said about the rules or the statutes or what

17   you'll need to do to master them?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Okay.  Now, do you also understand that

20   once we begin the trial -- and I think we scheduled it for

21   March, is that right?

22             THE DEFENDANT:  Yeah.

23             THE COURT:  Once we begin the trial, if you change

24   your mind and say, Judge, I actually want Mr. Willson to step

25   in and represent me now, I may allow that, but I won't allow

1    a continuance.  In other words, I won't say, okay, well,

2    Mr. Willson is not really up to speed as well as

3    Mr. McLaughlin is, so even though the jury's here, we're

4    going to take a month off.  You understand we're going

5    through the trial once we start?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Are there any questions you have for me

8    or you want to discuss privately with Mr. Willson before I

9    make the findings that I need to make?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Okay.  So I still have to advise you

12   that in my opinion a trained lawyer, especially one as

13   experienced in this area as Mr. Willson or one of his

14   colleagues or someone else I might appoint, would defend you

15   far better than you can defend yourself.  I'll say I think

16   it's unwise for you to try to represent yourself.  Although

17   you have some familiarity with legal concepts as a result of

18   being a police officer and you've taken a look at Rule 12,

19   fundamentally you're not familiar with court procedure and

20   you're not familiar with the Rules of Evidence and you're not

21   even familiar with the statutes under which you're charged,

22   so I would urge you not to try to represent yourself.  But

23   you have a right to do so.

24             And in light of all the information you and I

25   discussed today and on July 28th, do you still want to

1   represent yourself and give up your right to be represented

2   by counsel?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  And you want to make that decision now?

5   You don't want to wait -- and before you answer, let me just

6   say this.  I'm going to let you represent yourself,

7   Mr. McLaughlin, as long as I make the right finding in a

8   moment and so I'm not trying to dissuade you, but I do want

9   you to fully understand your options.  You could keep

10  Mr. Willson as your counsel in this case for a while, and you

11  could come back and we could even set a deadline for it, a

12  month before trial, and you could say Mr. Willson's done fine

13  as my lawyer, now, Judge, I want to represent myself and we

14  could do this again.  Why would that be of any advantage at

15  all to you?  Maybe you think it isn't.  But I can think of

16  one.  Which is Mr. Willson last time we were here talked

17  about some legal issues.  Talked about a case in which cert

18  is pending at the Supreme Court related to the tax charge.

19  He could help you with that.  And he is in a better position

20  to help you with that than you are on your own.  Does that

21  interest you at all?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Okay.  Fair enough.  I'm not going to

24  belabor this any longer.

25           Is anyone forcing you to represent yourself?

1           THE DEFENDANT:  No, sir.

2           THE COURT:  You're making this decision voluntarily?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And you understand your right to

5    counsel?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  And you understand your right to

8    represent yourself?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  And you've had enough time to think

11   about it?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.  I find that Mr. McLaughlin

14   has knowingly and voluntarily waived his right to counsel.  I

15   therefore will permit him to represent himself in this

16   matter.  I will appoint Mr. Willson as stand-by counsel.

17   Mr. Willson will assist Mr. McLaughlin but cannot replace

18   him -- cannot replace him as a lawyer in this case and cannot

19   play the lead role in this case.  The role of stand-by

20   counsel is, as I said, limited.  It's to provide technical

21   assistance.  It's to be present during the trial, to help

22   navigate the rules of courtroom procedure and protocol.  We

23   ordinarily don't have stand-by table sit at the table with

24   you.  You can have Mr. Willson either sit on the bench so you

25   can lean over and talk to him.  That way it's very clear to

1   the jury you are your own guy, you're representing yourself.

2   Do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Mr. Willson is not allowed to make

5   significant tactical or strategic decisions.  He's not

6   allowed to control the questioning of witnesses.  He can't

7   speak for you.  He can whisper in your ear when you want him

8   to.  But he can't be your lawyer.  Do you understand all

9   that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  So going forward,

12  Mr. McLaughlin, these will be the rules.  I'm going to treat

13  you as a lawyer.  You'll be held to the rules of law and the

14  rules of evidence.  When we get to trial, and I'll remind you

15  of this before the trial because some of this is trial

16  related, you'll have to refrain from speaking as though

17  you're testifying and refrain from voicing personal

18  observations in your comments on the evidence.  There will be

19  a time for you to testify if you want to testify.  And we'll

20  talk about that later.  But while you're acting as a lawyer,

21  you're acting as a lawyer and you can't talk -- you can't

22  say, well, that's not how I remember the facts.  Do you

23  understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  If you go outside those rules or violate

1    them unintentionally or not, I will give cautionary

2    instructions to the jury.  I could tell them to disregard

3    what you said.  I'll say to the jury that nothing lawyers say

4    is evidence in the case.  I give that instruction every time.

5    And I'll say that that instruction applies to statements that

6    you make while you're a lawyer representing yourself.  I'll

7    instruct the jury that anything you say in your lawyer role

8    is not evidence against you and that in that respect your

9    remarks are to be regarded the same as if an attorney were

10   making those statements.

11          If you do choose to testify at your trial, I'll

12   clarify that your sworn testimony is evidence in the case and

13   is to be treated as such.  During your opening statement, if

14   I end up allowing opening statements and in your closing

15   arguments, you'll not be allowed to comment on matters that

16   are not in evidence or matters that are solely within your

17   personal knowledge or belief.

18          As I said, we've discussed you'll be required to

19   comply with relevant procedural rules.  If I find that you

20   deliberately failed to obey the rules or that you've

21   willfully engaged in obstructionist misconduct, your right to

22   self-representation could be terminated.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  And do you have any

1      questions for me today?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  All right.  Very well.

4              So I'm going to direct the Clerk of the Court to

5      reflect that Mr. McLaughlin is representing himself, that

6      Mr. Willson is presently appointed as stand-by counsel.

7              I think Mr. McLaughlin, unless you can tell me a

8      good reason not to, we should proceed as I've indicated with

9      regard to sending pleadings, motions, papers and discovery to

10     Mr. McLaughlin with a copy to Mr. Willson so that

11     Mr. McLaughlin can be sure that if he goes to Mr. Willson's

12     office he'll have a full copy of what the Government has sent

13     to him.

14             Now, there was earlier in the case a motion for some

15     type of protective order.  I think, Mr. Kopel, rather than

16     trying to recreate a it from memory, Mr. Kopel, maybe you

17     could remind me of it a little bit.

18             MR. KOPEL:  Yes, Your Honor.  I'd like to reserve an

19     opportunity to address the issue of correspondence and

20     documentation.

21             THE COURT:  Actually, let's address your concerns

22     about correspondence and documentation first.

23             MR. KOPEL:  Thank you, Your Honor.  With much

24     respect for the Court's discussion of the need for

25     documentation, I think all parties need documentation of what

1   they purport to deliver and serve has been served and

2   received, and particularly incumbent on the Government which

3   bears the burden of proof ultimately in the case.

4           Let me just say the Government's very uncomfortable

5   with not -- if the ruling is that the Government shall not

6   send by certified mail and Mr. McLaughlin should not be

7   expected to comply with certified mail received, I would

8   object to that because I think documentation is important.

9   Given what we've seen so far in the case, in the public

10  record and court hearings, that Mr. McLaughlin wishes to, as

11  he may, exercise his right to proceed with minimal

12  consultation with stand-by counsel, I think it's especially

13  incumbent on the Government to be able to document that

14  matters in the litigation that were served on Mr. McLaughlin

15  were received by Mr. McLaughlin.

16          THE COURT:  So what would you have me do, order him

17  to accept receipt?  I mean, if he doesn't want to accept

18  certified mail because he has beliefs about certified mail,

19  what would you have me do exactly?  I think what I've come up

20  with is a reasonable proposal.  He understands that he can go

21  to Mr. Willson's office whenever.  You can send things to

22  Mr. Willson's office by certified mail if you want.  I'm sure

23  they won't be sending it back.  What would you have me do

24  exactly?

25          MR. KOPEL:  Nothing at present, Your Honor.  The

1    Government would rather proceed to serve by certified mail

2    because we think that with rights come responsibilities, and

3    one of those rights is if you're going to represent yourself

4    you have take responsibility --

5            THE COURT:  But, Mr. Kopel, he has -- I take it,

6    Mr. McLaughlin, the beliefs about certified mail are related

7    to your beliefs about the other things that you've talked

8    about today, is that true?

9            THE DEFENDANT:  It's not really beliefs.

10   Mr. Willson sent me stuff and it's regular mail.  The Clerk

11   sends stuff and it's regular mail.  I don't see the reason

12   why.

13           THE COURT:  Here's why.  This is sort of what I

14   talked to you about before.  He doesn't want to be in a

15   position later, and I understand it, where -- I mean, you

16   guys are adversaries in litigation.  The stakes are high,

17   let's be frank.  I've told you about the penalties that can

18   be imposed.  So he doesn't want to be in a position later

19   where you're saying I don't get notice of this, I didn't get

20   this.

21           I do understand why he's asking me and I've come up

22   with what I think is a reasonable compromise.  You've agreed,

23   as I understand it, correct me if I'm wrong, that you're

24   willing to go to Mr. Willson's office to make sure you have

25   everything.

1          THE DEFENDANT:  That is true.  But he's also going

2    to send it to me, correct?

3          THE COURT:  He's going to send it to you.  He's

4    telling me he should be able to send it certified mail.  I'm

5    arguing with him about that.  I'm saying why not just send it

6    regular mail.

7          Are we on the same page, Mr. McLaughlin?

8          THE DEFENDANT:  Yes, we are.

9          THE COURT:  Mr. Kopel, go ahead.

10         MR. KOPEL:  The Government can certainly proceed in

11   the manner urged by the Court.  We have concerns I already

12   voiced about that.  Here's a bottom line issue of a special

13   concern within that issue matrix and that is discovery.

14   Discovery, as I'm sure the Court is well aware, and defense

15   counsel and prosecutors routinely understand, is not

16   something that's considered to be distributed to defendants

17   to be distributed to third party repositories.  It often

18   involves sensitive information.  Some of it may not be as

19   sensitive as others, but it's not properly in the public

20   record, the agents and witnesses and particulars about the

21   case, many of which will not show up in evidence in case.

22         THE COURT:  This has nothing to do with certified

23   mail issue at this point.  This goes to your protective order

24   issue?

25         MR. KOPEL:  It does.  What I would prefer, short of

1    the protective order, and in preference to it, would be that

2    we just serve discovery to defense counsel.  That would be

3    the one category of documents that Mr. McLaughlin would need

4    to meet with his lawyer to review it in his lawyer's custody.

5    Everything else we can send certified to Mr. Willson, we can

6    send uncertified to Mr. McLaughlin and thereby resolve that

7    issue.

8              THE COURT:  Let me ask you this.  The type of order

9    that you were proposing, as I recall, would have me direct

10   Mr. McLaughlin not to, for example, file documents on the

11   land records or in court or in other public repositories, am

12   I remembering correctly?

13             MR. KOPEL:  That's correct.

14             THE COURT:  I certainly understand the Government's

15   concern with regard to witnesses, certainly addresses,

16   identifying information.  I understand that concern.  I think

17   it's a legitimate concern.  With regard to -- however, let's

18   say you have Mr. McLaughlin's tax return and you send that to

19   him in discovery.  If he wants to put it on the internet, I

20   mean, why should I order him not to?  There are some issues

21   of expression here.  I need to tread carefully.  And I think

22   rather than have me issue some blanket order, I would rather

23   come up with -- deal with this sort of on a case by case

24   basis.

25             My understanding is there's a binder or two of

1   documents.  Some of them are documents that the Government

2   contends were signed by Mr. McLaughlin and sent by him to

3   Treasury.  Those documents are not the kind I wouldn't think

4   that -- I don't know.  I guess until I see the documents, I

5   wouldn't know whether there are specific security concerns.

6            What about this.  What if with regard to -- let me

7   ask Mr. McLaughlin a question, because maybe we're just

8   taking too long.

9            What about this, Mr. McLaughlin?  So the

10  Government's raised some concerns about filing documents in

11  public repositories and places like that.  I don't want to

12  have a long discussion with you about that.  Let me ask this

13  question.  If the actual tax returns and documents that form

14  part of the Government's evidence in the case were at

15  Mr. Willson's office, and you could go whenever Mr. Willson

16  could make them available, would that be a problem?

17           THE DEFENDANT:  I think you already them, right?

18           THE COURT:  Yes, he has them.

19           In other words, do you need those documents at your

20  house?

21           THE DEFENDANT:  No.

22           THE COURT:  So let's proceed, Mr. Kopel, that way

23  then.

24           And so, Mr. McLaughlin, the documents are with

25  Mr. Willson.  If the Government has other discovery, they'll

1  send it to Mr. Willson.  You can go to Mr. Willson's office

2  to look at it whenever Mr. Willson says you can which I'm

3  sure will be frequent.  And is that satisfactory to everyone?

4          MR. KOPEL:  That is.  That avoids the need for

5  protective order.  We appreciate that.

6          THE COURT:  Mr. McLaughlin, you're okay with that,

7  sir?

8          THE DEFENDANT:  Are they going to be mailed to me?

9          THE COURT:  Mr. Willson, you're going to make them

10  available?

11          MR. WILLSON:  I think his question is are they going

12  to be mailed to me.

13          THE COURT:  No.  That's why I asked you if you need

14  them at your home and you said no.  So I assumed that you

15  were okay about that.

16          Let's back up.  If the Government files a motion on

17  the docket or they file something on the docket with this

18  Court, they're going to send that to your house by regular

19  mail.  That's done.  And they're also going to send it to

20  Mr. Willson, he'll a copy.

21          Now we're talking about the discovery which would

22  include some of the documents that the Government would like

23  to put into evidence in the case.  What's being proposed is

24  that we leave that at Mr. Willson's office as a repository,

25  but we don't send it to your home.  Is that acceptable to you

1    or not?

2              THE DEFENDANT:  No, Your Honor.  I mean, I was

3    dragged into this.  Why are they afraid to send it to my

4    house?

5              THE COURT:  Well, the Government said in papers

6    filed in court that they were concerned that you would be

7    filing some of these documents on the land records.  I think

8    there was a reference that may have already been done.  I'm

9    not saying they did that.  This is what the Government

10   represented in the papers.  And I don't even want to ask you

11   if you did it, okay, but that's what they're concerned about.

12   And so, for example, if there was a witness whose name was

13   published in the land records or in a public place, that

14   could create some security concern under certain

15   circumstances.  I don't have a specific document in front of

16   me so I can't be more specific right now.

17             That's the concern the Government's raising.  And

18   I'm trying to find a way to see if we can work with that

19   concern, but in a way that allows you access to the evidence

20   you need.  Do you want to address that?

21             THE DEFENDANT:  I think if Mr. Willson is stand-by,

22   everything that's sent to him should be sent to me.  I'm not

23   going to waive my right to receive any kind of discovery so I

24   can drive somewhere to pick it up.

25             THE COURT:  That's fine.  But then we do need to

1    discuss what you plan to do with the documents.  In other

2    words, the purpose of the Government giving you this

3    discovery is so you can get ready for the trial, so you have

4    an understanding of the evidence they're going to try to

5    introduce against you.  Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And so the purpose of these documents,

8    although you may view them as having other purposes, if you

9    were to take these documents and put them on FaceBook or post

10   file them in the Court or without a motion to seal or file

11   them on the land records and they were to contain peoples

12   names and addresses or Social Security numbers, that could

13   create security concerns.  Do you understand that?

14             THE DEFENDANT:  I understand.  I understand.

15             THE COURT:  And so I guess my question for you --

16   Mr. Kopel, am I right, did you make a representation in some

17   papers that Mr. McLaughlin had already filed some documents

18   on the land records?

19             MR. KOPEL:  Not in this very new case.  Rather, in

20   prior cases.

21             THE COURT:  I guess, Mr. McLaughlin, you and I are

22   going to have to work together a lot over the coming months.

23   You've probably figured that out by now.  So I like to start

24   out with a clean slate with everybody.  So I want to give you

25   the benefit of the doubt.  And so what I'd like to be able to

1   do is for you to tell me, to give me your word, that you

2   won't be filing -- that you'll keep those documents for

3   yourself, that you won't giving them out to third parties or

4   filing them on the land records, or if you think there's a

5   need to do that, you'll ask the Court permission by filing a

6   proper motion in the Court first.  Can I have your word on

7   that or not?

8           THE DEFENDANT:  Your Honor, honestly, I'm not sure.

9           THE COURT:  Okay.  I respect that.  But if you're

10   not sure then I am going to have to take steps to protect

11   against the possibility that you would do that, because

12   you're not willing to give me your word on that.  I respect

13   that.  But I have to take steps to ensure that those kinds of

14   risks don't happen.

15           What I would do is, one of the few things, depending

16   on what the document is, I think I need to see the documents,

17   Mr. Kopel, before I could make a judgment about which would

18   be appropriate.  There are a number of thing we could do.  We

19   have the Government redact the versions of the documents that

20   are sent to you and send the unredacted versions to

21   Mr. Willson.  What does redact mean?  Redact just means they

22   would Magic Marker out the sensitive information.  So you'd

23   have some of the documents, but you wouldn't have all of the

24   documents.  And to get all the documents you'd have to go to

25   Mr. Willson's office.

1          Now, you may say, well, geez, Judge, that's not fair

2     because I'm representing myself.  And I'd say I know.  The

3     problem is that you told me you're not willing to make a

4     representation to me about you'll handle these documents.

5     And so this is how we're going to have to do it until you

6     will give me your word on that.  That's one way to handle it.

7     Another way to handle it would simply be to have all the

8     documents at Mr. Willson's office and for you to to and make

9     arrangements to see them when you wanted to.  Another more

10    restrictive version would be to have the documents available

11    at the Government's office and you can go there to see them.

12          There's a lot of different ways we can proceed.

13    But until you you can give me your words about not filing

14    them on the land records or giving them to third parties, I'm

15    going to have to choose one of those options with respect to

16    sensitive documents.

17          Do you want to take some time to think about this?

18          THE DEFENDANT:  Like I said, I can't tell you that

19    I'm not going to -- I don't know what's going to happen.  I

20    don't know what I'm going to do.  I mean, I just can't -- you

21    give me the option to represent myself.  At the same time I'm

22    being restricted by what he wants.

23          THE COURT:  Well, no.  The restriction that I would

24    impose, the type of restriction that I would impose would be

25    one that is actually imposed in every case when lawyers are

1    involved.  Lawyers are bound not to file the documents on the

2    land records, for example, because the documents are to be

3    used only for preparation in a trial.  And if a lawyer wants

4    to use a document for some other reasons, the lawyer would

5    file a motion with the Court asking the Court's permission.

6    And if the Court thought there was a good reason to, the

7    Court would allow them.  That's all I'm proposing.  But if

8    you're not willing to live with that, then I'm going to have

9    to impose some restrictions, yes, so that third parties are

10   not -- innocent third parties are not harmed.

11          Do you want to be heard further on that,

12   Mr. McLaughlin?

13          THE DEFENDANT:  No, sir.  I still have the

14   same -- I'm being honest with you.  And I'm not going to sit

15   her and tell you that, you know, I don't know what's going to

16   happen.

17          THE COURT:  I appreciate that.  And I have no doubt

18   that you're being honest with me.  Thank you.

19          Let me be clear, Mr. Willson already has everything

20   or not?

21          MR. KOPEL:  He does.

22          THE COURT:  Okay.  So, Mr. McLaughlin, as we've

23   discussed, you can make arrangements to go to Mr. Willson's

24   office whenever you'd like to to see the documents.  And at

25   this time, I don't, Mr. Kopel, unless you think otherwise, I

1    don't see a reason to take any other steps other than to have

2    them stay at Mr. Willson's office.

3              MR. KOPEL:  The Government is fully satisfied with

4    that approach.

5              THE COURT:  Mr. McLaughlin, if after you go see the

6    documents at Mr. Willson's office you decide, you know what,

7    I don't even care, you decide whatever about these documents,

8    now that I've seen them I can give the Judge my word that I'd

9    like to take them home and I won't file them on the land

10   records or give them to third parties, you just file a motion

11   with the Court and we'll make sure that happens.  Do you

12   understand?

13             THE DEFENDANT:  Okay.  Yes, sir.

14             THE COURT:  All right.  What else, Mr. Kopel?

15             MR. KOPEL:  I actually believe that that addresses

16   our remaining concerns.

17             THE COURT:  All right.

18             Anything else you want to raise today,

19   Mr. McLaughlin?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Okay.  Thank you.  We'll be in recess.

22             (Concluded.)

23

24

25

```
1                 C E R T I F I C A T E

2

3          I, Martha C. Marshall, RMR, CRR, hereby certify that

4     the foregoing pages are a complete and accurate transcription

5     of my original stenotype notes taken in the matter of UNITED

6     STATES V. RAYMOND MCLAUGHLIN, which was held before the

7     Honorable Michael P. Shea, U.S.D.J, at 450 Main Street,

8     Hartford, Connecticut, on AUGUST 28, 2017.

9

10

11                              _/s/Martha C. Marshall_____
                                Martha C. Marshall, RMR,CRR
12                              Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25
```