UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:17-cr-129(MPS) |
| | : | |
| v. | : | |
| | : | |
| RAYMOND MCLAUGHLIN | : | |
| a.k.a. "Shakir Ra Ade Bey," | : | |
| a.k.a. "Shakir Ade Bey" | : | January 23, 2019 |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM IN RESPONSE TO QUESTIONS RAISED BY THE COURT

The Court having issued an order presenting a series of questions for the parties to address at sentencing, the United States responds to each question as follows. The United States also submits a corrected sentencing guidelines assessment based on its responses.

Question 1.a.   Basis of the government's loss calculation method:   The government relied on the intended loss definition from USSG § 2B1.1, Comment 3A(v), namely: all "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."   The components of that intended loss are:

| | |
|---|---|
| $233,000 | The unpaid mortgage, which defendant's conduct made clear he was determined not to pay, and which objective was the motivation for his filing the false tax documents against Judge Vacchelli. |
| $97,312 | CitiMortgage costs of litigation against defendant (understated, for reasons explained in the PSR at 6, n.1):   This was a clearly foreseeable result of defendant's intentionally defaulting on the mortgage note that he signed. *See also* cases cited at pp. 4-5 of the government's sentencing memo, holding that such foreseeable, consequential losses are counted. |
| $111,312: | The additional tax liability that defendant's false 1099-OID filing would have imposed on Judge Vacchelli if taken as true:   This also was clearly foreseeable, especially for someone as experienced as the defendant with false 1099-OID filings. *See also* discussion below regarding question 1.c. |
| _____ | |
| $441,624 | Total loss. |

Question 1.b.  Whether the $141,000 sale price of the home in question accounts for the losses caused by the defendant's vandalism:  Yes, the government agrees that it does. Understanding the home sale to have been "as is," the vandalism damages apparently were not been repaired for the sale, and hence should have been reflected in the sale price.  However, the fact and extent of the defendant's deliberate vandalism is relevant for the separate purpose of assessing the degree of *malice* with which the defendant acted in the course of the relevant conduct.

Question 1.c.  Whether the defendant's having also filed the false, 1099-OIDs on the state court case docket precludes a finding by a preponderance, that he intended the approximately $111,000 tax loss to Judge Vacchelli:  The government says yes, for following reasons.  First, Comment 3A(iv) to USSG § 2B1.1 defines, as part of intended loss, all pecuniary "harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense"; and comment 3A(ii) makes clear that this also "includes intended pecuniary harm that would have been impossible or unlikely to occur."  Hence even if the state court filing made it less likely that the tax penalty would be assessed, the defendant's submissions to *both* the IRS *and* the Treasury Department clearly rendered the imposition of that tax assessment reasonably knowable as "a potential result of the offense" – especially to one already as well-acquainted with false 1099-OID filings as the defendant, based on his prior, false tax filings introduced into evidence at trial.

Question 2.  Whether the Court should impose an enhancement for obstruction of justice under Section 3C1.1, in light of defendant's failure to attend court during the first two days of evidence, per USSG § 3C1.1, App. Note 4(E) (including in "non-exhaustive list" to which the enhancement applies: "willfully failing to appear, as ordered, for a judicial proceeding."): Yes.

Government counsel notes that the *only* reason he did not flag this issue previously is that, when he reviewed USSG § 3C1.1 for its potential applicability, he failed to notice this *second* clause in the application note, which listed "willfully failing to appear, as ordered, for a judicial proceeding." That enhancement clearly *does* apply here.   Even an attempted yet unsuccessful failure to appear has been found to trigger this enhancement.  *See United States v. Haladjian*, 603 F. App'x 561, 563 (9th Cir. 2015) (affirming district court's imposition of two-level obstruction enhancement for defendant who, between plea and sentencing and while on pre-sentence release, purchased a one-way ticket to Jordan and checked in for the flight (the opinion suggests that he never boarded the flight, but does not explain why, *e.g.*, whether by his choice, by his having no-fly status, or by law enforcement intervention).

Question 3.   Whether the Court may find by a preponderance of the evidence that "the offense of conviction was motivated by" the state court judge's status as a judge or other governmental employee, as required for an enhancement under Section 3A1.2(a):   Yes.   The fact that a defendant's conduct may be motivated by something other than, or additional to, directly seeking to harm the official victim does not negate the applicability of the enhancement: if the defendant knew of the victim's official status, and sought to harm him or her for reasons having anything to do with the victim's official status, the enhancement applies. *See, e.g., United States v. Bailey*, 961 F.2d 180, 182 (11th Cir. 1992) (enhancement applies where defendant entered post office, drew gun on the postal employee, and demanded and took the office's postal money orders and validation machine; that the defendant's motive was pecuniary (to rob the post office) and not vindictive (to harm the postal employee) did not render the enhancement any less applicable). Similarly here, precisely because Judge Vacchelli was the official who had ordered the defendant's

home foreclosed, the defendant sought to harm to judge, *qua* judge, in an effort to delay the foreclosure; hence the enhancement applies.

Revised USSG calculation:  The government's answer to question two means that two levels should be added to the sentencing guidelines analysis recommended in both the government's sentencing memo and in the Final PSR.  This means that the defendant presents a total offense level of 23 and a criminal history category I, which results in an advisory guidelines sentencing range of **46 to 57 months**.   For all the reasons set forth in the government's principal sentencing memo, the government recommends that the Court impose a sentence at the high end of that recalculated range.

>                          Respectfully submitted
>
>                          JOHN H. DURHAM
>                          UNITED STATES ATTORNEY
>
>                              /s/ Henry K. Kopel
>
>                          HENRY K. KOPEL
>                          ASSISTANT UNITED STATES ATTORNEY
>                          Fed. Bar No. ct24829
>                          157 Church Street, 23d Floor
>                          New Haven, CT   06510
>                          (203) 821-3700
>                          henry.kopel@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 23, 2019, I filed a copy of foregoing pleading. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  Because this is being filed after the close of business, and sentencing is tomorrow at 10:00 a.m., the government will bring an extra copy and serve *pro se* defendant McLaughlin in Court at the earliest possible opportunity before the start of the hearing.

      /s/ Henry K. Kopel

      Assistant U.S. Attorney