1    UNITED STATES DISTRICT COURT

2    DISTRICT OF CONNECTICUT

3
     UNITED STATES OF AMERICA,   )
4                 Plaintiff,  )              NO: 3:17CR129(MPS)
                               )
5    vs.                       )
                               )              January 24, 2019
6    RAYMOND McLAUGHLIN, *also*  )
     *known as* Shakir Ra Ade Bey,)
7    *also known as* Shakir Ade  )
     Bey,                       )
8                 Defendant.  )              Sentencing
     _____

9

10                       450 Main Street
                         Hartford, Connecticut
11

12

13   B E F O R E:
             THE HONORABLE MICHAEL P. SHEA, U.S.D.J.
14

15   A P P E A R A N C E S:

16   For the Plaintiff :        HENRY K. KOPEL, AUSA
                                United States Attorney's Office
17                              157 Church Street, 23rd Floor
                                New Haven, CT 06510
18
     For the Defendant:         RAYMOND McLAUGHLIN
19                              Pro Se

20

21

22

23

24   Court Reporter:           Martha C. Marshall, RMR, CRR

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

1          THE COURT:  Good morning, everyone.  Please be

2     seated.

3          We're here for sentencing in United States versus

4     Raymond McLaughlin.  The case is 17CR129.  Let's have

5     appearances.

6          MR. KOPEL:  Good morning, Your Honor.  Henry Kopel

7     for the United States.  Also, at counsel table is Special

8     Agent Christopher Gust from the Treasury Inspector General's

9     Office.

10          THE COURT:  Good morning.

11          Mr. McLaughlin is also here.  Good morning,

12     Mr. McLaughlin.

13          THE DEFENDANT:  I would prefer if you'd call me

14     Raymond.  I'm not Mr. McLaughlin.

15          THE COURT:  Okay.  If you'd like me to call you

16     Raymond, I'll call you Raymond, sir.

17          THE DEFENDANT:  Thank you.

18          THE COURT:  Just by way of the record, I should also

19     say that United States Probation Officer Paul Collette who

20     authored the Presentence Report in this case is also present

21     with us in the courtroom.

22          By way of procedural background, on July 23rd of

23     2018, after a jury trial, Mr. Raymond McLaughlin was found

24     guilty on Count Two of the Indictment, charging him with

25     false statement, in violation of Title 18, United States

1    Code, Section 1001.

2            A Presentence Report was thereafter prepared for the

3    Court by the United States Probation Office.  The initial

4    report was filed on the docket on December 13, 2018.  The

5    final report was filed on January 4th of this year.  A

6    supplement to the Presentence Report was filed on January

7    4th.  I've reviewed these materials and I've consulted with

8    Officer Collette.  I've also reviewed his sentencing

9    recommendation.  I have reviewed two sentencing memoranda

10   submitted by the Government, one dated January 10th and one

11   dated January 23rd.  I've also reviewed a series of filings

12   by Raymond McLaughlin, the person who asked me to call him

13   Raymond today, and I will when I address him.  They are

14   listed on the docket as docket numbers 229, 232, 233, 234,

15   235, 236, 240, 243, 244, 245, 246, 247, 249, and 250.  I've

16   also reviewed the Government's memorandum in opposition to

17   several of these filings.

18           Let me begin with Mr. Kopel.

19           Mr. Kopel, has the Government provided notice to

20   victims in this case?

21           MR. KOPEL:  Yes, Your Honor.  In fact, Judge

22   Vacchelli, among others.  Judge Vacchelli is here.  He's

23   indicated at this time he does not seek to speak, but I have

24   advised him if he should change his mind at any time he is

25   more than welcome to address the Court.

1          THE COURT:  That's fine.  That's right, sir.  Thank

2    you.

3          MR. KOPEL:  And we also addressed Citimortgage

4    which, is the mortgage holder, and they've been contacted but

5    have elected not to come.

6          THE COURT:  Very well.  Thank you.

7          Now, I'm going to ask Raymond -- Mr. McLaughlin,

8    you've asked me to call you Raymond so I'll do that --

9    concerning the Presentence Report.  And so, Raymond, let me

10   ask you, have you read the Presentence Report in this case?

11         THE DEFENDANT:  No.

12         THE COURT:  My understanding from Mr. Collette is

13   that he did send you a copy but you sent it back, is that

14   correct?

15         THE DEFENDANT:  Correct.

16         THE COURT:  And so you had an opportunity to read it

17   but you didn't want to read it, is that accurate?

18         THE DEFENDANT:  The Court has no jurisdiction.

19         THE COURT:  I understand that's your view, but what

20   I'm asking you now is it true that you had an opportunity to

21   read the Presentence Report but you chose not to for any

22   reason?

23         THE DEFENDANT:  The Court has no personal

24   jurisdiction.

25         THE COURT:  Do you want me to read the factual

1  statements in the Presentence Report to you now?

2      THE DEFENDANT:  I'm asserting my Fourth Amendment

3  right of my person.

4      THE COURT:  I'm going to take that as a no.  If

5  you'd like me to read the factual statements in the

6  Presentence Report to you now I will, but you need to tell me

7  right now that that's what you want me to do.

8      THE DEFENDANT:  I'm asserting my Fourth Amendment

9  right.

10      THE COURT:  All right.  So I'm going to make a

11  finding that Mr. McLaughlin has waived his right to read and

12  review the Presentence Report.  I will ask at this time

13  Mr. Collette just to put on the record the steps he took to

14  interview Mr. McLaughlin and to provide him with a copy of

15  the Presentence Report.

16      MR. COLLETTE:  Yes, Your Honor.

17      THE COURT:  If you wouldn't mind coming to the

18  podium.  Just right here so that the court reporter can hear

19  what you have to say.

20      Go ahead.

21      MR. COLLETTE:   Thank you, Your Honor.

22      On September the 27th, 2018, after the Defendant's

23  hearing before Your Honor, I approached the Defendant and

24  respectfully asked the Defendant if he would like to meet

25  with Probation for his presentence interview.  I brought down

1    my question set, release of information forms with the

2    expectation that we could do the interview there.  He stated

3    to me one word, no.

4            THE COURT:  He stated to you?

5            MR. COLLETTE:  No.

6            On November the 15th, 2018, I emailed Jean Singleton

7    who is the Program Director at the Wyatt Detention Facility

8    in Central Falls, Rhode Island.

9            THE COURT:  Which is where Mr. McLaughlin, the

10   person who asked me to call him Raymond, was detained, is

11   that right?

12           MR. COLLETTE:  Yes, Your Honor.  I asked the Program

13   Director if she would relay to the defendant if he would meet

14   with the U.S. Probation Office for a PSI interview,

15   understanding that the Probation Office, myself, would be

16   driving out there and would meet with Mr. McLaughlin at his

17   convenience for as long as he wanted to conduct the

18   presentence review.  That was an email that was sent on

19   November the 5th, 2018.

20           On November the 7th, 2018, the Program Director

21   responded via email three words.  "He refused.  Thanks."

22           On December the 13th, 2018, I completed the first

23   draft of the Presentence Report and that draft was Fed-Exed

24   to the defendant at the Wyatt Detention Facility in Central

25   Falls, Rhode Island.

1                  On December the 17th, 2018, the original Presentence

2        Report that was Fed-Exed to the defendant was returned back

3        to the Probation Office in Hartford via envelope with several

4        stamps and handwriting on the envelope.

5                  THE COURT:  Do you have anything else you wanted to

6        tell me?

7                  MR. COLLETTE:  On January the 4th, the final version

8        of the Presentence Report was Fed-Exed to the defendant at

9        Wyatt.  And on January the 9th, 2019, the final version of

10       the Presentence Report was, once again, returned to the

11       Probation Office.

12                 THE COURT:  Would you provide to our courtroom

13       deputy to mark as court exhibits the mailing documents that

14       you received back from Wyatt, including the envelope and any

15       other documents that show that you sent the report to

16       Mr. McLaughlin and that he returned it to you.

17                 MR. COLLETTE:  Would that also include, Your Honor,

18       the Presentence Report itself?

19                 THE COURT:  No, that shouldn't be marked as a Court

20       Exhibit.  That's filed under seal.

21                 MR. COLLETTE:  Thank you, Your Honor.

22                 THE COURT:  So let's have you -- you can do that at

23       the end of the proceeding.  Just don't forget.

24                 Do you want to get some stickers for that purpose?

25                 THE CLERK:  I have some.

1          THE COURT:  Thank you.

2          Does the Government have any objections to the

3    factual statements in the Presentence Report?

4          MR. KOPEL:  None, Your Honor, thank you.

5          THE COURT:  Mr. McLaughlin did file, as I mentioned,

6    a series of documents.  One of them was entitled objection to

7    Presentence Report.  It doesn't actually address the factual

8    statements in the Presentence Report.  I will, nonetheless,

9    overrule it at this time because, first of all, it doesn't

10   speak to the Presentence Report.  Secondly, the arguments

11   that it makes are not supported by the law or the facts in

12   this case.  I will be making a series of rulings after this

13   proceeding on Mr. McLaughlin's other filings but, to be

14   clear, there's a series of motions that were filed.  All of

15   those will be denied because they lack an arguable basis in

16   law or fact, and all of the objections will be overruled.

17   They largely make Fourth Amendment type arguments that lack

18   merit.

19          There being no other objections to the factual

20   statements contained in the Presentence Report, I adopt those

21   factual statements as my findings of fact.

22          Mr. McLaughlin, you face the following maximum and

23   minimum penalties in this case:

24          You face a maximum term of imprisonment of five

25   years.

1          You face a maximum term of supervised release of

2    three years.

3          If the Court were to impose probation, it would be

4    for a minimum of one year and a maximum of five years.

5          You face a maximum fine of $250,000.

6          Does the Government contend that restitution is owed

7    in this case?

8          MR. KOPEL:  Yes, thank you, Your Honor.  And if I

9    did not include it in the sentencing memo that was my error.

10   I'm going to look at it right now, because I believe we would

11   request -- yes, we did ask for a restitution order in the

12   amount of $92,731 which is calculated from the principal, not

13   plus interest, just the principal of the mortgage that was at

14   issue and the underlying conduct less the sale price of the

15   house.

16         THE COURT:  So let me ask you about that.  The

17   restitution statute, either 3663 or 3663A has the same

18   language for these purposes, defines a victim as follows:

19   The term victim, for restitution purposes only.  I'm not

20   talking about the Guidelines now.  I'm reading right now from

21   3663A(a)(2).

22         For purposes of this section, the term "victim"

23   means a person directly and proximately harmed as a result of

24   the commission of an offense for which restitution may be

25   ordered, including in the case of an offense that involves as

1    an element a scheme, conspiracy, or pattern of criminal

2    activity, any person directly harmed by the Defendant's

3    criminal conduct in the course of the scheme, conspiracy, or

4    pattern.

5             So as I read the statute, it really deals with the

6    offense of conviction, doesn't it?

7             MR. KOPEL:  I think Your Honor makes a strong point.

8    Because I think for purposes was wording of the statute as

9    you read out, it would appear that either Judge Vacchelli is

10   the sole victim recognized under that law and because there

11   was no -- I believe we could say no actual loss.  I would be

12   happy to stand corrected by the Judge if there were costs

13   involved in addressing what was done to him with the IRS, but

14   I think you're right, Your Honor.

15            THE COURT:  Sir, did you want to say anything about

16   that?

17            JUDGE VACCHELLI:  No.  I didn't have any costs.

18            THE COURT:  Thank you, sir.

19            So in light of that, I find that no restitution is

20   owed, because I agree with Mr. Kopel that for purposes of the

21   restitution statutes, as opposed to the Sentencing

22   Guidelines, Judge Vacchelli is the only victim in the case

23   and there was no financial loss to him. I am, nonetheless,

24   required to impose a special assessment of $100.

25            Does either side have any objection to my statement

1    of the statutory penalties?

2              MR. KOPEL:  No, Your Honor.

3              THE COURT:  Raymond, did you have any objection,

4    sir?

5              (No response.)

6              THE COURT:  All right.  I don't hear anything.

7              One of the things I'm required to consider in

8    sentencing any defendant is a body of advice called the

9    United States Sentencing Guidelines.  The Guidelines are

10   issued by the United States Sentencing Commission.  They

11   provide me, as the sentencing judge, with guidance or

12   recommendations on what would be a fair and just sentence by

13   requiring me to examine the type of offense involved, here,

14   making false statements in an area within the jurisdiction of

15   the United States or to a Government agency.  They require

16   the Court to consider the characteristics that sometimes

17   accompany that type of offense, and to consider the

18   Defendant's criminal record, if any, as well as other

19   factors.  The end result of the process of applying the

20   Sentencing Guidelines in a particular case results in

21   pointing the Court to a range of months of imprisonment that

22   the Sentencing Commission has decided would be appropriate in

23   a case like this one.  I'm not required to sentence

24   Mr. McLaughlin within that range, but I do have to calculate

25   the range accurately and consider it, along with other advice

1    the Commission gives me, as well as other factors when I

2    impose sentence.

3            Before sentencing, I placed two notices on the

4    docket.  One of them was to raise some questions I intended

5    to raise today concerning the loss calculation and concerning

6    two other possible enhancements here which are mentioned in

7    the Presentence Report, one concerning obstruction of

8    justice, and the other concerning the official victim

9    enhancement.  I also placed a notice on the docket concerning

10   a condition of supervised release that the Court is

11   considering imposing that would prohibit Mr. McLaughlin from

12   making filings either in the court or by sending -- or on the

13   land records or with other Government agencies or sending

14   correspondence to Government officials without obtaining

15   consent from the Court to do so beforehand.  I make clear

16   that any such condition would not prevent Mr. McLaughlin from

17   challenging his conviction and sentence.

18           So let me ask both sides whether they wish to

19   comment.  Of course, I have read the Government's brief that

20   was filed yesterday commenting on the Guidelines issues.

21           Mr. Kopel, did you want to add anything to that?

22   Did you want to say anything about the proposed supervised

23   release condition?

24           MR. KOPEL:  Thank you.  I think my supplemental

25   brief addresses the Court's questions, unless the Court has

1    further inquiry.

2         As far as the supervised release condition, while I

3    confess I have not deeply researched that, I am quite

4    familiar from the general practice at the U.S. Attorney's

5    Office that there have been cases similar to this one with

6    respect to the volume and nature of filings which have led to

7    court orders limiting those filings to those focused on the

8    subject matter at issue and possible appeals from that.  I

9    have would have no objection.  I think it's a reasonable

10   proposal.

11        THE COURT:  One or two questions on the Guidelines

12   before I leave you.

13        You do agree that with regard to -- assuming the

14   Court makes the findings, and I do expect to, I'll ask

15   Mr. McLaughlin if he has anything to say first.  With regard

16   to the loss to Citibank, for Guidelines purposes, you do

17   agree that the correct calculation of that loss is the

18   principal of the mortgage which was $233,000 and change,

19   minus the foreclosure sale value, was which $141,000, plus

20   the attorneys fees?

21        MR. KOPEL:  Yes, Your Honor.

22        THE COURT:  I think -- I guess I will, if you want

23   to comment further, I saw the filing you made with regard

24   to -- I saw the argument in your brief with regard to

25   intended tax loss and the definitions.  I don't know if you

1    want to say anything further about that.  I guess where I may

2    part waves with you on that is I think the Court has to make

3    a finding by a preponderance of the evidence that

4    Mr. McLaughlin intended to impose a loss on Judge Vacchelli.

5    And I will say -- and actually just to give Judge Vacchelli

6    if he wants a chance to speak to this, I would welcome his

7    comments.  My own sense of the trial evidence and the facts

8    set forth in the Presentence Report are that Mr. McLaughlin's

9    intent was in filing the tax -- the false tax documents with

10   the IRS and the Treasury, and filing them in court around the

11   same time, was the same intent pretty much that he exhibited

12   throughout the process, which was to frustrate, impede, slow

13   down the state court foreclosure procedure in that particular

14   case by, frankly, harassing Judge Vacchelli, and perhaps

15   hoping to get him to either recuse himself or take him off

16   the case, and was very much appeased with the baseless

17   grievances filed against the judge and many other steps.  I

18   think that the fact that he filed it, though, with the court

19   around the same time that he filed it with the Treasury,

20   tends to weigh against the finding that he actually intended

21   to impose that loss on Mr. Vacchelli.  But that's just my

22   current thinking.  I'd be happy to hear more about that if

23   either one of you wants to say anything about that.

24          MR. KOPEL:  If I may, Your Honor.  I think Your

25   Honor rightly points out that there is some possible

1    ambiguity in the definition of intended loss.  And depending

2    on how one resolves that, it may resolve the factual

3    question.  It's possible that the Court and the Government

4    have a slightly different perspective on that in that what we

5    focused on page two of our supplemental memo was that comment

6    3A IV to the Guideline in question, 2B1.1, it defines the

7    intended loss as harm that the defendant -- the intended loss

8    is what the defendant knew or under the circumstances

9    reasonably should have known was a potential result of the

10   offense.  So from our perspective, it's a bit of a lower

11   standard than I think I hear the Court relying upon.  This is

12   subject, of course, to the --

13            THE COURT:  Let me ask you about that.  So

14   reasonably foreseeable pecuniary harm under the Guidelines,

15   comment IV, is defined as you just stated, I agree.  But

16   reasonably foreseeable pecuniary harm appears as part of the

17   definition of actual loss and it does not appear, as I see

18   it, in the definition of intended loss.  Do you have the

19   Guidelines there?

20            MR. KOPEL:  I'm going to pull them out.  Thank you,

21   Your Honor.

22            THE COURT:  I may be getting this wrong so I want to

23   check it with you.  To be clear, I'm looking at 2B1.1,

24   application note 3.

25            MR. KOPEL:  Thank you, Your Honor.  There's an

1    interesting interpretative question.  This is how the

2    Government sees it.  Intended loss is defined in sub Roman

3    numeral (II) and says:  The pecuniary harm that the Defendant

4    purposely sought to inflict, and it includes -- and that's

5    where it says even if it is impossible, for instance, in the

6    Government's --

7         THE COURT:  It says includes intended pecuniary harm

8    that would have been impossible or unlikely to occur.

9         MR. KOPEL:  Yes.

10        THE COURT:  I agree with that.

11        MR. KOPEL:  And then it defines pecuniary harm in

12   Roman numeral III.  And then in Roman numeral IV, to me it's

13   a further development to the concept of pecuniary harm

14   whether for intended or whether for actual or intended --

15        THE COURT:  Well, except that, I guess, and maybe

16   this is the source of disagreement.  The term reasonably

17   foreseeable pecuniary harm actually is part of the definition

18   of actual loss which is (a)(1).  And so I think it's

19   reasonable to read the separate definition of reasonably

20   foreseeable pecuniary harm as further articulating actual

21   loss.

22        MR. KOPEL:  I suppose my only retort to that, and

23   this is ultimately a judgment call, Your Honor, but at the

24   end of that definition in subnote IV, Roman numeral IV, it

25   says "knew or under the circumstances reasonably should have

1    known was a potential result of the loss."  So I'm thinking

2    that that embraces intended but not realized loss.  But

3    there's an argument in both directions, I see it.  So I defer

4    to the Court.

5            THE COURT:  I just wanted -- I'm not trying to make

6    him speak at all.  It's perfectly fine.  In light of what I

7    said earlier about my thinking about Mr. McLaughlin's intent,

8    I just want to make sure, Judge Vacchelli, if you wanted to

9    say anything about that or if you wanted to express

10   disagreement?

11           JUDGE VACCHELLI:  No, I have nothing additional to

12   say, Your Honor.  I just gave the facts at trial.  I'll leave

13   it to the Court to decide the law and listen to the

14   arguments.

15           THE COURT:  Thank you, sir.

16           So in light of that -- thank you, Mr. Kopel -- I

17   will ask the person who has asked me to call him

18   Raymond -- actually, I'm sorry, before I do that.  You were

19   okay with the supervised release condition?

20           MR. KOPEL:  Yes.  Could I add one thing, Your Honor?

21           THE COURT:  Yes.

22           MR. KOPEL:  My general approach to this issue, which

23   may or may not influence the Court's thought, is that I

24   regard the loss that could have ensued to Judge Vacchelli as

25   a collateral consequence of what I think the Court rightly

1    points out was the primary objective.  And my understanding

2    is that collateral objectives, if reasonably foreseeable,

3    would still fall within intended loss.  But I think we have

4    hashed out the different approaches to this and that's my

5    submission.

6             THE COURT:  Thank you.

7             Raymond, let me ask you, did you want to say

8    anything about any of what I've discussed with the Government

9    concerning the loss, what was intended by your actions, or

10   the condition of supervised release that would prevent you

11   from filing things without the permission of the Court?  Did

12   you want to say anything about any of those things, sir?

13            THE DEFENDANT:  Is this a public courtroom?  Is this

14   a public court?

15            THE COURT:  It is, indeed.

16            THE DEFENDANT:  Are you a public judge?

17            THE COURT:  I'm not sure what you mean by that.  Did

18   you want to say anything about what I said, sir?

19            THE DEFENDANT:  I want to, but I need to clarify if

20   this is a public --

21            THE COURT:  You don't need to clarify anything.

22   What I'm asking you --

23            THE DEFENDANT:  My private rights are being

24   violated.  That's why I'm asking.

25            THE COURT:  Do you want to say anthing?

1          THE DEFENDANT:  I put a notice on the record which

2   is there, which you've seen, I have mentioned, and the notice

3   is clearly stated that you, as a public judge, does not have

4   personal private jurisdiction yet this hearing is still going

5   on.  So if this is a public court, how can you have private

6   jurisdiction?  That's what I want to know.  And I have other

7   things that I need to say of course.

8          THE COURT:  Go ahead and say them.

9          THE DEFENDANT:  I, Raymond, possessing my private

10  right, that is, my possessory interest, nine-tenths of the

11  law, in my person, as the sole and rightful owner of my

12  person.  Now, again, notice the public, that public Judge

13  Michael Shea, the Court, lacks private personal jurisdiction.

14  He never acquired private personal jurisdiction and only has

15  authority over the title to my person in this case.

16          Under Amendment Four, my possessory interest, which

17  is nine-tenths of the law, in my person, which is my private

18  right, see *Alderman v. United States*, 394 U.S. 165, 174 22

19  L.Ed.2d 17689 Supreme Court (1969).  That private right

20  outweighs United States' public interest, its' title,

21  one-tenth of the law, to my person.  In other words, I,

22  Raymond, have private personal jurisdiction and a public

23  judge, such as Michael Shea, can never have or acquire

24  private personal jurisdiction, that is, Michael Shea, a

25  public judge, can never have or acquire the private personal

1    right to speak.  A public judge's only interest is in the
2    title to my person.  A public interest, which is not a
3    private right and, thus, by operation of law bar the public
4    judge, to wit, Michael Shea, from having private personal
5    jurisdiction.  Thus, Michael Shea, a public judge, can never
6    have acquired a private right to speak.  And whereas title
7    does not attach to my person to or provide possessory
8    interest, a judgment rendered on a personal private
9    jurisdiction is void, because public judge Michael Shea has
10   authority only to command and make legal determinations for
11   the title to my person and not my person.  In conclusion,
12   public judge Michael Shea cannot, never acquired, or have
13   private personal jurisdiction because private rights do not
14   exist in the public.  Furthermore, Defendant Kopel committed
15   common law trespass when he sanctioned and caused Defendant
16   Dragan to invade upon my possessory interest in my person.
17   When Kopel committed the common law trespass he knew or
18   should have known that he only had authority over an interest
19   in the title to my person and not my person.  Kopel also knew
20   and should have known that a title to my person is public and
21   that said title is outweighed by my private rights which is
22   my possessory interest which is nine-tenths of the law and my
23   person.  Being fully aware of this information, Kopel
24   committed common law trespass during which he invaded my
25   possessory interest in my person, knowing that my private

1    right is protected by Amendment Four to the Constitution and

2    that he only had interest and authority over the title to my

3    person and not my person.  The common law trespass was

4    deliberate -- was deliberately committed by Kopel as a part

5    of his duties as a United States Attorney or Assistant

6    Attorney who knew or should have known the law governing his

7    conduct.  Kopel had no license from me to justify his action

8    of the common law trespass which lasted approximately ten

9    hours and during which I had no dominion and control of my

10   person.  Kopel's actions violated Amendment Four and caused

11   pain, suffering, and emotional distress to me.  Defendant

12   Dragan committed common law trespass also when he invaded my

13   possessory interest in my person on June 8, 2017.  When

14   Dragan committed common law trespass upon my possessory

15   interest in my person, he purposely injured me because he

16   knew or should have known the law of the Government's conduct

17   and that he only had authority over and interest in the title

18   to my person and not my person.  And because Dragan knew or

19   should have known that a title to my person is public and

20   that said title is outweighed by my private rights, that is

21   my possessory interest, nine-tenths of the law, in my person,

22   he intentionally committed common law trespass as part of his

23   duty as an Internal Revenue Service Officer knowing that my

24   private right to be secure in my person is protected by

25   Amendment Four to the United States Constitution, and that he

1    only had interest in and authority over the title to my

2    person and not my person.  Dragan had no license from me to

3    justify his action of common law trespass which lasted

4    approximately ten hours and during which I did not have

5    exclusive control over my person.  Dragan's actions violated

6    my possessory interest in my person and Amendment Four which

7    caused pain, suffering, and emotional distress to me.  The

8    Court has been noticed that it has no personal jurisdiction

9    over this because this is a public courtroom and you are a

10   public judge.

11            THE COURT:  Did you want to say anything else?

12            THE DEFENDANT:  No.

13            THE COURT:  Okay.  I will address your points in the

14   proceeding.

15            Turning to the Guidelines calculation, I find as

16   follows:

17            First, I'm using the manual effective November 1st,

18   2018, which is the manual in effect today.  The relevant

19   Guideline is Section 2B1.1.  The base offense level set forth

20   in that Guideline is 6 for this type of an offense.  I agree

21   with the Government and the Probation Office that

22   Mr. McLaughlin's conduct vis-a-vis Citibank, although not

23   part of the offense of conviction, constitutes relevant

24   conduct under Section 1B1.3 of the Guidelines.  The

25   Government argued to the jury at the trial that based on the

```
 1    evidence, and I find that the evidence presented at trial
 2    showed by a preponderance of the evidence that
 3    Mr. McLaughlin's filing of false tax documents with the IRS
 4    and Treasury regarding Judge Vacchelli was part of an overall
 5    common scheme or plan, and certainly part of the same course
 6    of conduct as his overall attempt to continue living in his
 7    house without paying the mortgage used to purchase or
 8    refinance it.  As the Government argued at trial, and as the
 9    evidence showed easily by a preponderance, he never paid a
10    dime on the refinance mortgage despite that he and his wife
11    had income and assets more than sufficient to do so.  He was
12    given opportunities to cure his defaults to which he did not
13    respond.  He dragged out the mortgage foreclosure litigation
14    in various ways, including by filing frivolous motions,
15    filing baseless grievances against the judge, by filing a
16    baseless federal lawsuit, by ripping up his mortgage in the
17    courtroom, and by committing the offense conduct in this
18    case.  The loss must, therefore, be calculated not only on
19    the basis of the offense of conviction but also on all of the
20    relevant conduct under Section 1B1.3.  I find that the loss
21    attributable to the offense and the relevant conduct taken
22    together is $189,000.  This includes the $92,000 difference
23    between the value of the mortgage loan, the principal of the
24    mortgage loan, and the foreclosure sale proceeds, that is to
25    say, 233,000 minus 141,000, plus $97,000 in attorneys fees
```

1    incurred by Citibank, which I find also to have been a direct

2    result of the relevant conduct in this case.

3            I do part ways with the Government about the

4    intended loss.  Although I admit it's a reasonable

5    disagreement.  I do not find that the evidence at trial

6    showed by a preponderance of the evidence an intention to

7    cause a financial loss to Judge Vacchelli.  Mr. McLaughlin

8    filed the tax documents on the state court docket in his

9    foreclosure case at around the same time he sent them to the

10   IRS and the Treasury Department.  I find that that action was

11   intended to alert Judge Vacchelli to the situation and to

12   cause him to recuse himself or otherwise intended to

13   interfere with the progress of the lawsuit, as Mr. McLaughlin

14   had done many, many times before and as he, frankly, has

15   attempted to do in this case.  Had he intended to impose a

16   loss to Judge Vacchelli, I think it's unlikely he would have

17   alerted him to the conduct so that the IRS would not have

18   stopped its investigation at the outset and may have assessed

19   him a deficiency.  So in light of my finding that the loss is

20   $189,000, I add 10 levels under Section 2B1.1(b)(1)(F).

21           I also find that the addition of three levels under

22   Section 3A1.2(a) of the Guidelines is warranted.  That

23   Guideline provides that if the victim of the offense was a

24   Government officer and the event was motivated by such status

25   then three levels are added.  I find that the evidence at

1    trial showed by at least a preponderance of the evidence that

2    Mr. McLaughlin filed the false documents with the IRS in

3    order to harass Judge Vacchelli, impede the litigation

4    against Mr. McLaughlin over which Judge Vacchelli was

5    presiding, and to pressure Judge Vacchelli to recuse himself

6    from that litigation or otherwise to take steps that would

7    have slowed down the litigation.  All that is sufficient to

8    show that Mr. McLaughlin was motivated by Judge Vacchelli's

9    status as a officer of the Government, because only such an

10   officer, namely a judge, can preside over litigation.  And

11   therefore whether or not Mr. McLaughlin had any ill-will

12   toward Judge Vacchelli is beside the point.  The fact is he

13   targeted Judge Vacchelli because of his status as the person

14   who had the power to slow down the mortgage foreclosure.

15   And, therefore, I find that the enhancement applies.

16          I also find that an enhancement of two points

17   applies for obstruction of justice under Section 3C1.1

18   because Mr. McLaughlin willfully failed to appear, as

19   ordered, for a judicial proceeding under application note 4E

20   of 3C1.1.  On the day of jury selection, after he arrived

21   over an hour late, having been told when jury selection would

22   be previously and having been warned about the need to attend

23   court at the pretrial conference, and on other occasions, and

24   after claiming that he thought the trial would start the

25   following day, I specifically warned Mr. McLaughlin that it

1    was a condition of his release that he attend court
2    proceedings.  I should say I reminded him of that.  I also
3    told him that if I found that he willfully violated that
4    condition, I could find him to be in violation of the
5    conditions of his release and order him to be detained.  He
6    told me he understood that warning.  Nevertheless, the next
7    day he did not show up for trial.  After both his defense
8    lawyer and the Probation Officer who was supervising him at
9    the time attempted repeatedly but unsuccessfully to contact
10   both him and his wife, I made a finding that he knowingly and
11   voluntarily absented himself from the trial.  Later on the
12   same day I was informed by the probation officer that he had
13   left a note stating that he would rather die than go to
14   prison.  He did not attend court the next day either.  I
15   issued a warning for his arrest to the U.S. Marshals in light
16   of his violation of his condition of release.  The U.S.
17   Marshals devoted resources as, it turns out, did the Hartford
18   Police to finding him.  I also spent time communicating with
19   the U.S. Marshals about this matter, at one point
20   interrupting the charge conference to take a call from them
21   concerning his whereabouts.  It is true that Mr. McLaughlin
22   returned voluntarily to court on the Monday after the first
23   two days and weekend of the trial, and he showed up in the
24   building on his own apparently due to a change of heart.  But
25   that doesn't make his failure to appear on the first two days

1    of trial, after being warned, anything but willful.  I still
2    may take his voluntary return into account in deciding where
3    in the Guideline sentencing range to sentence him or whether
4    to impose a non-Guidelines sentence, and I certainly will
5    take that conduct into account.  Nonetheless, I find an
6    enhancement is warranted under this provision.  So an
7    additional two points applies.  When the math is done, six
8    points plus ten points plus an additional five points for the
9    two enhancements, I find that the offense level is 21.

10              Mr. McLaughlin has, of course, not accepted
11   responsibility for his offense.  Mr. McLaughlin has no
12   criminal record.  And as a result he is in Criminal History
13   Category I.  As a result, I find that his Guidelines range is
14   37 to 46 months of imprisonment, one to three years of
15   supervised release, a fine of 15,000 to $150,000, and a
16   special assessment of $100.

17              Does either side object to my determination of the
18   Guidelines range?

19              MR. KOPEL:  No, Your Honor.  Thank you.

20              THE COURT:  And I don't hear any objection from
21   Mr. McLaughlin.

22              THE DEFENDANT:  Your Honor, do you have personal
23   jurisdiction in this matter?

24              THE COURT:  Sir, do you have an objection?

25              THE DEFENDANT:  I'll object to everything.  Do you

1   have personal jurisdiction in this matter in this public

2   courtroom?

3            THE COURT:  Sir, I'm not going to respond to your

4   questions.  That's not how this proceeding works.  I will

5   address your points --

6            THE DEFENDANT:  But you're conducting a hearing that

7   where you admitted earlier on the record that this is a

8   public court, yet you're using private rights to enforce

9   against my person which is a conflict of interest.  You can't

10  have private rights in the public.  And everybody's

11  proceeding as if this is okay and it's not okay.

12           THE COURT:  I understand that's your position and

13  I'm going to address your position at the end of this

14  proceeding.  Right now I'm in the position of -- there are

15  certain steps that I have to take in the sentencing.  I will

16  address your arguments.

17           With regard to -- did you have an objection to the

18  calculation of the Guidelines?

19           THE DEFENDANT:  I object to everything.  Your Honor

20  has no personal jurisdiction.

21           THE COURT:  Fair enough.  All right.  We've now

22  reached the part of the proceeding where I'll ask both sides

23  if they would like to make their presentations in support of

24  a sentence taking into account not only the Guidelines, but

25  the sentencing factors in Section 3553(a) of Title 18.  And

1    I'll begin with Mr. McLaughlin.  Did you want to say anything

2    else other than what you've already said, sir?

3            THE DEFENDANT:  Judge Michael Shea never acquired

4    private personal jurisdiction because private rights do not

5    exist in the public.  The judgment was void because it was

6    not rendered -- because it was rendered with no private

7    personal jurisdiction.  A judge without jurisdiction is no

8    more than a man in the street.  What his views may be with

9    respect to a given issue presented to him are but of a

10   passing moment.  Jurisdiction either exists or it doesn't.

11   The issue of jurisdiction can be raised at any time even, as

12   has been said, on a petition for a rehearing after unanimous

13   decision by the Supreme Court.  See *Indianapolis v Chase*

14   *National Bank*, 314 U.S. 63.

15           THE COURT:  Did you want to say anything else, sir?

16           THE DEFENDANT:  What was that?

17           THE COURT:  I said did you want to say anything

18   else?

19           THE DEFENDANT:  No.

20           THE COURT:  All right.  I'll hear from the

21   Government.

22           MR. KOPEL:  Thank you, Your Honor.

23           I just want to say that as a general matter this

24   case is both with respect to Mr. McLaughlin very tragic, but

25   it's also very serious.  And the reason we regard this as

1   serious and have asked for a high end sentence which is

2   something I very rarely do in court is five factors.  Some of

3   these I've outlined in the Government's sentencing documents,

4   but I want to sum them up here with certain emphases.

5          Factor one is the duration and the intensity of this

6   course of conduct of which the offense for which

7   Mr. McLaughlin was convicted was a part.  This has been going

8   on for 10 years, since 2009.  It shows no signs of abating.

9   It manifests throughout this course of conduct a series of

10  false very determinatively held beliefs by Mr. McLaughlin

11  which, in sum, negate the fundamental duties that we all have

12  as citizens in a free country to follow the laws, to pay our

13  financial obligations taken on willfully, and to keep our

14  promises when we enter into solemn legal obligations.  The

15  belief system Mr. McLaughlin has adopted negates all of that.

16  And the only reason that some folks who follow these

17  doctrines, like Mr. McLaughlin, manage for a time to get away

18  with it is because all the rest of us in the broader

19  community do follow the laws, do sign documents truthfully

20  intending to carry out our legal obligations.  Should this

21  ever become more prominent across the society, you really

22  couldn't have the decent civil society in which a free

23  republic depends.  So while it might seem trivial to some

24  from the outside looking in, this is serious and very

25  problematic stuff.

1          The second point the Government is concerned about

2  is the resulting extent of disruption and at times

3  destruction resulting from anyone who acts upon these beliefs

4  as Mr. McLaughlin has.  For many, many years the folks who

5  own the mortgage, in this case Citimortgage, had to deal with

6  a tremendous amount of disruption simply trying to get

7  Mr. McLaughlin, who had the ability to pay his mortgage, to

8  do so.  And in an honorable way they approached this

9  thoughtfully.  As the Court said, the evidence at trial

10  showed Citimortgage tried to remedy things with

11  Mr. McLaughlin.  They invited him to renegotiate the terms of

12  the mortgage.  They said we want to help you save your home.

13  Mr. McLaughlin wouldn't have any of that.  He took the

14  position that even though I signed the mortgage and entered

15  this deal and reside in this house, I'm not paying a dime.

16  And he did not.  Despite having the capacity.

17          This then -- the damage and disruption then extended

18  to the court system.  We all know how tremendously busy and

19  overworked and overfilled with cases and responsibilities

20  state judges are across the country, like Judge Vacchelli,

21  who by every shred of evidence that was presented in court,

22  including his own testimony and demeanor, really manifested

23  that Judge Vacchelli was someone whom all of us would

24  emulate, the patience, the thoughtfulness, the desire to bend

25  over backwards to show all citizens that you have a right to

1  be heard.  And he did hear Mr. McLaughlin, time and time and

2  time again ad nauseam.  And Mr. McLaughlin's response to that

3  graciousness was to take advantage of the Court and seek to

4  manipulate the Court with false filings, bogus filings,

5  ethical complaints against this good judge's conduct who, no

6  matter how ill-founded, had to deal with the anxiety, the

7  stress, and the time out of his already over-filled workday

8  to address them with the Judicial Conduct Commission which,

9  of course, found no basis for the complaints that

10 Mr. McLaughlin filed.  And the time on the Judge's docket, he

11 carefully answered all these motions, as he testified, and

12 common sense would also validate, very rarely do cases have

13 this kind of disruptive litigation.  If a substantial

14 portion, never mind all one's cases were like that, business

15 of the courts would grind to a halt.  Once again, this

16 behavior is so deeply uncivil to what's required of citizens

17 in a free society to carry on and have rights that are

18 respected and a system that can respect them.

19        And thirdly, the -- may I have the Court's

20 indulgence here -- this is especially troubling given

21 Mr. McLaughlin's, I'll say it with no reservation, honorable

22 past before the year 2009.  Mr. McLaughlin took on the role,

23 was hired as a police officer --

24        THE DEFENDANT:  Objection, I was never a police

25 officer.

1          THE COURT:  Sir, I'm going to require that you

2    refrain from making comments while Mr. Kopel is speaking.  If

3    you want to respond after he's done, I'll give you a chance

4    to do that.

5          THE COURT:  Go ahead, Mr. Kopel.

6          MR. KOPEL:  Thank you, Your Honor.

7          I'll just say for the record, and I respect

8    Mr. McLaughlin's right to disagree because we are a free

9    country with rights, but the Government spoke with

10   Mr. McLaughlin's former supervisor, Kelvin Kearse, a very

11   decent man who was the captain and I believe he later was the

12   Chief of the Windsor Police Department.  He's now Chief of

13   Security for the Windsor public schools.  A man who really

14   respected Mr. McLaughlin's high quality work as an officer,

15   who told us Mr. McLaughlin had been voted Officer of the Year

16   by his peers shortly before these incidents in 2009 started

17   happening.  And he told us, he warned Mr. McLaughlin when he

18   started espousing this philosophy, this belief system, he

19   told us that he told Mr. McLaughlin in 2009 and 2010, he

20   said, Raymond, I know of people who have done this and

21   adopted this belief system and stop following the laws and

22   think the laws don't apply to them.  And, Raymond, he said,

23   every one of them ends sadly in jail.  And he tried to warn

24   him off.  Mr. McLaughlin thought he had superior knowledge

25   and disregarded that advice.

1          The fourth consideration is the complete and utter

2    lack of acknowledgement that this was not the right path to

3    follow by Mr. McLaughlin.  I have never in 25 years as a

4    prosecutor seen a case with a defendant lacking such remorse.

5    In fact, just the opposite.  Mr. McLaughlin has spent a lot

6    of the last few months filing motions with the court accusing

7    the Judge here, Your Honor Judge Shea, myself, Agent Gust,

8    Agent Dragan, and anyone else involved in the prosecution and

9    management of this case, with being in a conspiracy to

10   deprive him of rights, without any acknowledgment that it was

11   his conduct that, unfortunately, brought him before the court

12   with a charge found by a Grand Jury and a guilty verdict

13   found by a jury of the people.  So this indicates that

14   Mr. McLaughlin in his present frame of mind is happy and, in

15   fact, intends to continue this disruptive course of action

16   with not end in sight visibly.

17          And lastly, there's the concept of general

18   deterrence.  I said in my sentencing memo that I've been

19   given to understand from more than one agent, particularly in

20   the IRS and the IRS Inspector General's Office, and I have

21   also heard this from sheriffs and deputy sheriffs from the

22   mid-west at training sessions that I've been to by the

23   Department of Justice, that this ideology which goes under

24   the rubric -- Mr. McLaughlin may object, he has a right to --

25   but it's called sovereign citizen ideology, it is toxic and

1    it is proliferating across the country.  It has the use of

2    legal terms but it really, in my mind, and I think the

3    evidence shows, is an ideology that is nothing more than an

4    excuse to betray one's obligations of honesty and of

5    integrity with one's fellow citizens.  It is a philosophy

6    that rationalizes the cheating of your community and your

7    fellow citizens and the most fundamental civic obligations.

8    As I said at the outset, to keep your promises so far as

9    possible, to pay the debts that you've willfully undertaken,

10   to follow the laws, that if we don't all follow them we lose

11   the benefits of living in a free and decent society.  It is a

12   toxic ideology and it needs to be deterred.

13           And lastly, Your Honor, as I said in my sentencing

14   memo.  These cases are not brought as often as other cases

15   involving other kinds of crimes are for the simple reason

16   that prosecuting them often involves a tremendous time

17   investment.  And I'm not complaining.  I'm just saying that

18   that these cases are under prosecuted and therefore under

19   deterred.  And this is one of the very few times in

20   Connecticut where the message can go out whoever seeks to

21   adopt this kind of behavior and belief system, it's a very

22   bad idea.  Don't do it.

23           Thank you, Your Honor.

24           THE COURT:  Thank you, Mr. Kopel.

25           Mr. McLaughlin, other than saying that you were not

```
 1   a police officer, is there anything else you'd like to say in
 2   response to what Mr. Kopel said?
 3              THE DEFENDANT:  I have a Fourth Amendment right to
 4   secure my person yet he talks on honestly.  The United States
 5   and you have the liability for the person.  You know that.
 6   He knows that.  You back up the title.  You back up the title
 7   for everything.  You know that.  But yet you put an
 8   indictment into the Court and start this process and try to
 9   make it seem as if I'm the one not paying my bills.  You guys
10   have the title.  When you have a title you're the one who is
11   liable and you know that.
12              THE COURT:  Mr. McLaughlin, sir, address your
13   comments to me.
14              THE DEFENDANT:  The Fourth Amendment clearly states
15   that I have a right to be secure in my person.  That's what
16   it says.
17              THE COURT:  It does say that.
18              THE DEFENDANT:  The United States has the title to
19   that person.  That is the public interest.  That's the public
20   side of the point.  You guys have that.  Which makes
21   Mr. Kopel my fiduciary.  He is my fiduciary.  Any debt that
22   the person creates he's liable for it.  United States is
23   liable for it.  It's in the Constitution.  And yet he talks
24   about somebody not being honest when he brought this case
25   into the court by not being honest.  I sent him a notice of
```

1    discharge and he hasn't done so yet, but you guys are still

2    proceeding with this violating my private rights which I have

3    which is private, by the way, it's private.  And hasn't been

4    admitted in this court.  This is a public court.  So either

5    someone has stolen my private rights and converted me to a

6    public being or something isn't right.  But some kind of

7    farce is going on.  So he's the fiduciary here, and Your

8    Honor knows that, but still I'm being prosecuted for

9    something that the United States has agreed to accept the

10   liability for.

11             THE COURT:  All right.  Thank you, sir.

12             I'm going to take a short recess.  I'll be back in

13   about five minutes to impose sentence.

14             (Recess.)

15             THE COURT:  Please be seated.

16             Mr. McLaughlin, I will address the points you made

17   today as well as the points you made in your filings in a few

18   minutes.  First, it's my job, however, to explain the

19   sentence that I'm going to impose.

20             The law requires me to consider a series of factors

21   before deciding on a sentence.  The factors are listed in

22   Section 3553(a) of Title 18 of the United States Code.  Those

23   factors include your background and characteristics, the

24   nature and circumstances of this crime, the purposes of a

25   criminal sentence.

1           The purposes of a criminal sentence include

2    punishment.  Punishment itself includes the need to reflect

3    the seriousness of the offense and the need to promote

4    respect for the law, among other things.

5           Deterrence.  Deterrence includes both deterring you

6    from committing crimes in the future and deterring others

7    from committing this type of a crime.

8           Rehabilitation, which means addressing treatment or

9    medical or vocational needs you might have, and protecting

10   the public from further crimes by you.

11          Those are the purposes of a criminal sentence.

12          Another factor the law requires me to consider is

13   the Sentencing Guidelines.  As I said before, the Guidelines

14   range in this for imprisonment is 37 to 46 months, and for

15   supervised release one to three years.  And the fine range is

16   what I stated before.

17          I have to consider the need to avoid unwarranted

18   sentence disparities among defendants with similar records

19   who have been found guilty of similar conduct.

20          In cases where restitution applies I have to

21   consider restitution, but I don't find that applies here.

22          In short, what the factors require me to do is to

23   take all the information I've learned about you and all the

24   information I've learned about the case and weigh that

25   information to determine a sentence that is fair, just, and

1    reasonable, and also one that is sufficient but no greater

2    than necessary to serve the purposes of sentencing.  Now,

3    I've considered all of the factors here, but every case is

4    different and some factors weigh more heavily than others.

5    So I want to explain more specifically how I've reached a

6    decision as to the appropriate sentence in your case.

7         First, I should point out the law gives me

8    discretion to depart from the Guidelines range.  I'm not

9    going to exercise that discretion because I don't see a basis

10   for departure.  The law also gives me discretion, however, to

11   impose a non-Guideline sentence.  I am going to exercise my

12   discretion to do that for reasons I will describe as I walk

13   through how I believe each of these factors applies in this

14   case beginning with your background and characteristics.

15        Now, you say today you're not a police officer, but

16   that's not what the facts in the case show.  And your

17   background as a police officer and as someone who worked in a

18   halfway house shows that you have some knowledge of the law

19   and, in fact, at one point you took an oath to uphold it.

20   You are also -- there's evidence that you were also

21   specifically warned by your boss about the dangers of diving

22   down the rabbit hole of sovereign citizen ideology.  You

23   chose to do it anyway, at a huge cost to yourself and your

24   family.  You were making a good income.  You had good

25   benefits.  Your wife was making a good income.  By all

1    accounts you have a good family and you have a child who you

2    were supporting.  You had a home.  You had -- you were living

3    the American dream and you chose to throw it away.  You have

4    no criminal record.  You never previously served time.  But

5    you chose to take steps to get on a train down this rabbit

6    hole and it's apparent today from your conduct and throughout

7    this case that you continue to want to be on that train.

8              I should point out I've conducted competency

9    examinations previously.  I've always found you to be

10   competent.  You've always shown an understanding of my

11   questions.  You've shown that today, even though your

12   responses were not actually responses in a legal way, and at

13   times you've shown moments of great clarity.  For example, at

14   the pretrial conference in this case you actually at times

15   were actually behaving reasonably effectively as your own

16   lawyer at that time.  You were making pertinent arguments.

17   And then after the verdict came, you also made some pertinent

18   points in the filings you made.  Then, for whatever reason,

19   you chose to return to expressing the belief that you've

20   expressed over and over and over again in this case.  And

21   that's your decision.  I do not find that -- I don't think

22   there's any basis to find that you suffer from any mental

23   defect.  I've observed you many times in the courtroom.  I

24   think that you know exactly what you're doing and have known

25   what you're doing for the last decade.

1        Turning next to the nature and circumstances of this

2   offense which is also a factor I'm required to consider.  I

3   agree with Mr. Kopel that the offense conduct and the

4   relevant conduct are serious.  I should say by the standard

5   of federal offenses that I have to sentence it does fall at

6   the low end of the spectrum for seriousness.  It's not a

7   violent offense.  It's still serious.  But the nature of the

8   offense is only the beginning.  I also have to consider the

9   circumstances of the offense.  And the circumstances here

10  make it more serious.  Your false statements to the IRS were

11  not a quixotic prank.  They were not a victimless tax

12  protest.  They were not aimed at apparently reducing your own

13  tax liability.  They were, instead, an assault on a public

14  official and on the civil justice system and the foreclosure

15  process.  Worse, they were part of the broader pattern of

16  disrespect for the law and others shown by you, including

17  previous false tax filings, other harassing conduct aimed at

18  the judge who was presiding over the case, a deliberate and

19  fraudulent exploitation of Citibank's willingness to extend

20  you a mortgage, and the list goes on.

21        The next thing I want to talk about are the purposes

22  of a criminal sentence that are most salient here.  First and

23  foremost, there's a need to reflect the seriousness of this

24  offense.  Targeting a public official for harassment is

25  serious conduct.  Government employees, including judges,

1    have to be allowed to do their jobs free from fear of

2    harassment by disgruntled litigants.  There's a crying need

3    in this case to promote -- for the sentence to promote

4    respect for the law.  Ever since 2009, when you decided to

5    refinance your mortgage and not pay for it, you exhibited a

6    callus disrespect for the law.  People in this country work

7    hard every day precisely because they know they need to pay

8    their mortgage.  You chose to live in your house without

9    paying your mortgage.  And then you accentuated that conduct

10   by committing the offense conduct in this case and by taking

11   various other steps that the Government has already outlined

12   and of which you were well aware, all of which exhibit

13   disrespect for the law.  Your comments today continue to

14   exhibit that disrespect.  And to be clear, you're not going

15   to be sentenced today for your beliefs.  That's not what's

16   happening here.  You are free to believe whatever you want to

17   believe and you're free to express yourself however you wish.

18   What you're not free to do is to act on beliefs in a way that

19   shows disrespect for the law.  And your conduct and relevant

20   conduct in this case show that pattern of action.  And it's

21   for that that you will be sentenced, not for your beliefs

22   alone.

23          There's also a need in this case to protect the

24   public.  Although you have no record of violence and you have

25   not sold drugs, your behavior still harms the public.  It

1    harms the justice system by diverting resources from

2    meritorious cases.  That has included your conduct in this

3    case.  There are dozens of filings in this case that are

4    nonsensical, that have caused the Court to have to spend time

5    on them, have caused the Government to have to spend time on

6    them.  You are, of course, free to represent yourself.  We've

7    granted you that right.  But you're not free to file the same

8    frivolous arguments repeatedly on the docket, especially

9    after you've been warned not to do so.

10         There is also -- the need to protect the public is

11   also underscored by your lack of remorse and, frankly, lack

12   of acknowledgement that you've even done anything wrong.  You

13   show no sign that even six months of incarceration has caused

14   you to think about your conduct any differently.

15         Turning to general deterrence.  I agree with the

16   Government.  As set forth in its sentencing memo, cases

17   against sovereign citizens are hard to prosecute, precisely

18   because of the defendants in those cases throw up a lot of

19   junk, frankly, aimed at clogging the wheels of justice.  They

20   don't stop those wheels, but they do sometimes make them turn

21   more slowly and they create much more work for everyone

22   involved.  But that's, of course, part of the goal.  Make the

23   life of public officials difficult and complicated and delay

24   proceedings so justice won't ultimately be one or cause

25   diversion of resources.  It's important for the sentence to

1    send a message aimed at discouraging that conduct and I find

2    that a substantial prison sentence is necessary to send that

3    message in this case.

4            There is also a need for specific deterrence,

5    especially in light of your attitude.  There's a need for the

6    sentence to deter.  There's also a need, I find specifically,

7    for a lengthy period of supervised release to protect the

8    public and deter.  In particular, I'm going to impose a

9    condition of supervised release that I placed on the docket

10   that will bar you from making filings in public bodies,

11   including courts, in the land records, and other public

12   agencies.  It will bar you from sending materials to public

13   officials without prior consent of the Court.  That will not

14   affect you from attacking your conviction and sentence, which

15   you have a right to do, and the condition will accept such

16   challenges.  I will say that even those challenges are

17   limited, as it's likely you will ultimately find out, by

18   they're limited by the law.

19           I, of course, am fully aware that you have a

20   constitutional right to petition the Government for redress,

21   but you've abused that right.  You've made false filings with

22   the IRS.  You've made frivolous filings in this case.  You've

23   made frivolous filings in the state court litigation.  You've

24   made frivolous filings in at least three other federal

25   actions, a couple of habeas petitions which have already been

1    filed and dismissed, a lawsuit against various others

2    involved in this case, a federal lawsuit about the mortgage.

3    All of those actions were dismissed because they were all

4    frivolous.  I, therefore, find that a condition requiring you

5    to obtain consent from the Court before making further such

6    filings is sufficient but not greater than necessary to

7    protect the public.  And I find that that condition is

8    necessary.  As I said, it will allow you to make filings for

9    legitimate cases by obtaining the consent of the Court to do

10   so.

11           Turning next to the Guidelines.  I certainly think

12   that Mr. Kopel's argument is a reasonable one.  That a

13   sentence at the top of the Guidelines range here, in light of

14   all of the circumstances in this case, would not be

15   unreasonable.  That said, I do find that a Guideline sentence

16   is greater than necessary to serve the purposes of

17   sentencing.  I'll point out that Mr. McLaughlin has no

18   criminal record.  He's never served time previously.  And so

19   there is at least no compelling evidence that a below

20   Guideline sentence will not achieve the goals of sentencing

21   justice effectively.  I will say Mr. McLaughlin's behavior

22   over the last few months since he's been incarcerated do give

23   me a little pause because they suggest that the six months so

24   far have certainly not done anything to accomplish the

25   purposes of sentencing.  I should say, though, here with the

1   Guidelines sentence, the Guidelines range has been driven in

2   part by the loss calculation.  And the 2nd Circuit has warned

3   district judges of the need to be careful of the effects of

4   the loss calculation on sentences under this particular

5   Guideline.

6        In this case, I find that by far the most serious

7   harm was not the loss imposed on Citibank.  While that's

8   serious and it's part of the relevant conduct, it's actually

9   not, unfortunately, all that different from what I see in

10  some of the mortgage foreclosure defenses that have come to

11  my court and those folks, in my understanding, aren't

12  actually prosecuted.  In my view, by far the most serious

13  conduct here was the harassment of a public official through

14  the use of false tax filings aimed at an improper end, which

15  was either to cause the official to leave the case or

16  otherwise to slow down the case.  That conduct is serious and

17  it isn't really addressed by this Guideline.  So, for

18  example, if I were to take this as a no loss case, the

19  Guidelines range would be 8 to 14 months.  And in my view, a

20  sentence in that range would not be sufficient to meet the

21  purposes of sentencing that I've described.  In particular,

22  it would understate how serious, dangerous, and disruptive to

23  the justice system Mr. McLaughlin's conduct -- offense

24  conduct has been.  So my sentence will be below the

25  Guidelines range, but not substantially below the Guidelines

1    range.

2         Lastly, in terms of disparities, this is a somewhat

3    unusual case.  I think it's unlikely that there's a danger

4    that there will be great disparities here.  As I said, my

5    sentence will not be substantially off of the Guidelines

6    range.

7         In short, I find that the following sentence is the

8    one that is sufficient, but not greater than necessary to

9    serve the purposes of sentencing in this case.  I should say

10   that I would make that finding regardless of the Guidelines

11   calculations I have made because I find that this sentence is

12   necessary and the lowest sentence necessary to accomplish the

13   purposes of sentencing that I've described.

14        Mr. McLaughlin for the reasons I've described, I

15   sentence you to 30 months in prison, three years of

16   supervised release.  In addition to the standard conditions

17   of supervised release, the following mandatory conditions of

18   supervised release are imposed:

19        First, the Defendant shall not commit another

20   federal, state, or local offense.

21        Second, he shall not unlawfully possess a controlled

22   substance.

23        Third, he shall refrain from any unlawful use of a

24   controlled substance and submit to one drug test within 15

25   days of release on supervised release, and at least two

1  periodic drug tests thereafter for use of a controlled

2  substance.

3          Next, he must pay a special assessment imposed in

4  accordance with Title 18, United States Code, Section 3013.

5           Next, he shall not possess a firearm or other

6  dangerous weapon.

7          Next, he shall cooperate in the collection of a DNA

8  sample.

9          In addition to the mandatory and standard

10  conditions, the following special conditions of supervised

11  release are imposed:

12          Unless he obtains permission in writing from the

13  Court beforehand, Mr. McLaughlin is prohibited from, first,

14  filing claims, liens, lawsuits, notices, or other similar

15  papers with the state court, the federal court, on the land

16  records, or in any commercial registry or with the U.S.

17  Attorney's Office; and, second, he's prohibited from sending

18  correspondence to the U.S. Attorney's Office, the Probation

19  Office, the District Court, or any prosecutor, judge, or

20  probation officer without, again, without permission ahead of

21  time from the Court.

22          This condition will not apply to documents filed in

23  court to challenge Mr. McLaughlin's conviction or sentence

24  except as the right to make even those filings may be limited

25  under the law.  I should say -- let me say that differently.

1    This condition will not apply to documents filed in court to

2    challenge Mr. McLaughlin's conviction or sentence period.  I

3    should note, however, that even those filings may be limited

4    under the law.  There may be a basis for a filing injunction

5    eventually against Mr. McLaughlin.  And he is warned that the

6    continuing making of frivolous filings may ultimately result

7    in a filing injunction that would prevent him from filing

8    anything on the docket without the Court's permission.

9    Furthermore, there are statutory restrictions on the ability

10   to file successive habeas petitions.

11          I impose no fine.

12          I impose no restitution.

13          I impose a special assessment of $100.

14          Does either party know of any reason the sentence

15   I've described cannot be legally imposed as the sentence of

16   the Court?

17          MR. KOPEL:  Not from the Government, Your Honor.

18          THE COURT:  Sir, did you wish to say anything other

19   than what you've already said?

20          THE DEFENDANT:  Mr. Kopel, Mr. Christopher Gust,

21   Mr. Dragan has violated my possessory interest, my law common

22   law on my possessory interest, my private rights, and you're

23   issuing an order prohibiting me from filing a lawsuit to

24   justify what they did to me.  Is that correct?

25          THE COURT:  No, sir, it's not correct.  You

1    apparently weren't listening.  What I did is I issued a

2    condition of supervised release which is a status that

3    applies after you are released from prison which requires you

4    to obtain the Court's permission to file documents on the

5    docket, among other places.

6           The sentence I have described is imposed as the

7    sentence in your case.  The judgment will be prepared for my

8    signature by the Clerk's Office in consultation with the

9    Probation Office.

10          Mr. McLaughlin, you have a right to appeal the

11   sentence.  If you wish to appeal, you must file a written

12   Notice of Appeal within 14 days of the entry of judgment.  Do

13   you understand?

14          THE DEFENDANT:  Who is being sentenced, the title?

15          THE COURT:  Do you understand what I said?

16          THE DEFENDANT:  Is it the title that's being

17   sentenced?

18          THE COURT:  I find that you do.  If you wish to

19   appeal but you can't afford to do so, you may apply for leave

20   to appeal in forma pauperis.  If that motion is granted, the

21   Court will waive the filing for your appeal and appoint

22   counsel to represent you at no cost to you.  You must file an

23   affidavit concerning your income and expenses in order for

24   the Court to allow you to proceed in forma pauperis.  Do you

25   understand, sir?

1          (No response.)

2          THE COURT:  Okay.  I find that you do.

3          Lastly, I will address the arguments that

4  Mr. McLaughlin has presented in various papers as well as

5  today.  The distinctions he attempted to draw today have no

6  basis in law or fact.  As I've explained to him previously,

7  the Government is not his fiduciary.  There is no distinction

8  in law between private and public rights.  There's no such

9  thing as the difference between a public judge or a public

10  court and a private judge or a private court.  These matters

11  are simply not recognized by the law.  There's also no doubt

12  that the Court has jurisdiction in this case, as I've told

13  him repeatedly, and as I've issued rulings about before.

14          With regard to particular motions that he's filed,

15  the Motions to Dismiss, number 229 and 233, and the Motion

16  for Immediate Release are denied because they aren't timely,

17  because as to the motions to dismiss they violate the Court's

18  previous order concerning the pending Motions to Dismiss

19  which is ECF number 146 at pages 9 to 10, and because they

20  lack an arguable basis in law or fact.

21          To the extent he is challenging his detention, his

22  challenge lacks merit.  Mr. McLaughlin has been detained at

23  the Wyatt Detention Facility both because there was clear and

24  convincing evidence that he violated a condition of his

25  release, namely, that he appear at all court proceedings as

1  required, which is set forth at ECF number 16 at page one,

2  and because in light of his conduct at the trial and based on

3  findings the Court made during the trial, there were no

4  conditions the Court could impose that would assure that he

5  would not flee and, further, because he was unlikely to abide

6  by any conditions of release.  In any event, given that the

7  jury returned a verdict of guilty on the same day he was

8  detained, under the law the Court was required to order his

9  detention on that date unless it found by clear and

10  convincing evidence that he was not likely to flee.  A

11  finding the Court could not have made under the circumstances

12  which included his failure to show up to trial after warnings

13  from the Court and a note he reportedly left with his wife

14  indicating that he would rather die than go to prison.

15        To the extent he is challenging his initial arrest,

16  that challenge likewise lacks merit as a Grand Jury found

17  probable cause that he has committed two felonies, of one of

18  which he was ultimately found guilty and as a judicial

19  officer issued a lawful warning for his arrest.

20        The Motion to Vacate Respective Sentence is denied

21  because it was filed before the Court imposed the sentence,

22  and because it lacked an arguable basis in law or fact for

23  the reasons I've already described.

24        The objection to sentencing, number 234 and 246, are

25  overruled for the same reasons, and for other reasons the

1    Court has previously explained on the record, for example, as

2    to the unsupported notion that the Government is a trustee or

3    fiduciary for Mr. McLaughlin.

4              I also adopt and incorporate by reference the

5    analysis set forth in the Government's memorandum, ECF number

6    241 as set forth in these proceedings.

7              Anything else to cover?

8              MR. KOPEL:  Not from the Government, Your Honor.

9    Thank you.

10             MR. COLLETTE:  Your Honor, does --

11             THE COURT:  Designation?

12             MR. COLLETTE:  Yes, sir.

13             THE COURT:  Mr. McLaughlin, do you have a preference

14   as to the correctional facility to which you're designated?

15   I can include a request, which is just a request from the

16   court.  It's ultimately up to the Bureau of Prisons, which is

17   part of the Department of Justice, to decide where you will

18   be incarcerated.  I can, for example, I can include a request

19   you be designated to a facility as close to Connecticut as

20   possible.  I can also make a request that you be designated

21   to Danbury which is the only men's federal correctional

22   facility in Connecticut.  Do you wish for me to do that?

23             THE DEFENDANT:  No.

24             THE COURT:  Do you want me to make any designation

25   at all?

```
 1              (No reponse.)

 2              THE COURT:  I'll take that as a no.

 3              Very well.  We'll be in recess.

 4              Thank you.

 5              (Concluded.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        C E R T I F I C A T E

2

3           I, Martha C. Marshall, RMR, CRR, hereby certify that

4   the foregoing pages are a complete and accurate transcription

5   of my original stenotype notes taken in the matter of UNITED

6   STATES V. RAYMOND MCLAUGHLIN, which was held before the

7   Honorable Michael P. Shea, U.S.D.J, at 450 Main Street,

8   Hartford, Connecticut, on January 24, 2019.

9

10

11

12                                  /s/Martha C. Marshall
                                    Martha C. Marshall, RMR,CRR
13                                  Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25